LEMMON, Judge.
This is a suit by a public utility against a customer to recover payment for consumption of electricity during a three-year period in which the usage registered on the meter was allegedly inaccurate because a device called a “jumper” had been installed on the meter. After a trial on the merits the suit was dismissed on the basis plaintiff failed to prove defendant had installed the jumper. Plaintiff’s appeal raises the issue of what amount, if any, defendant is liable for in excess of that originally billed and paid.
I
On July 14, 1976 plaintiff’s employee discovered a jumper on the meter which measured electricity furnished to defendant’s single family residence. The meter and jumper were immediately removed, and a new meter was installed.
Plaintiff’s meter tampering expert explained that a jumper is a metallic object placed on the electrical line between the line side and the load side of the meter for *843 the purpose of diverting unmeasured electricity around the measuring device, so that the meter reading would reflect less than the actual consumption of electricity. Upon testing the particular device, the expert found it diverted up to 70% of the load.
Another meter tampering expert, analyzing the company’s eight-year billing records for defendant’s residence, noted that consumption had dropped dramatically beginning in August, 1973 and had increased dramatically in August, 1976, when the jumper was discovered and removed. This expert therefore opined that the jumper had been installed in August, 1973.[1] Further noting that the fluctuations over the entire billing history would be within normal limits if the meter readings during the suspect period were doubled, he suggested that approximately 50% of the electricity provided to the house from August, 1973 to August, 1976 had been diverted and had not registered on the meter. The total value of this estimated amount of diverted electricity was $1,274.16.
II
The trial court erred in requiring proof that defendant had installed the jumper as an essential element of plaintiff’s evidence. This action is one to recover payment for electricity provided by plaintiff and used by defendant, and plaintiff simply had to prove, by a preponderance of the evidence, the amount' of electricity used during the relevant period in order to recover the balance due by the customer in excess of the amount billed and paid. The identity of the person who installed the jumper is not a relevant fact in determining the amount of electricity used. Louisiana Power & Light Co. v. Bourgeois, 355 So.2d 597 (La.App. 4th Cir. 1978).
Plaintiff’s burden of proof by a preponderance of the evidence is successfully borne when the direct and circumstantial evidence, taken as a whole, shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 245 So.2d 151 (La.1971). In the present case the overall evidence strongly suggests that a significant amount of electricity was diverted by the jumper found attached to the meter, causing a discrepancy between the amount actually used and the amount registered. No other conclusion is equally plausible or likely, and no other explanation can as reasonably be ascribed. Boudreaux v. American Ins. Co., 264 So.2d 621 (La.1972). Therefore, no matter who installed the jumper, defendant’s usage of electricity for that period had not been paid for in full. Furthermore, the overall evidence preponderantly established that the billing for the period from August, 1973 to August, 1976 was approximately 50% lower than the actual amount of electricity furnished and used during that period.[2]
*844 Accordingly, the judgment of the trial court is reversed, and it is now ordered that judgment be rendered in favor of plaintiff in the amount of $1,274.16, plus legal interest as prayed for and all costs in both courts.

REVERSED AND RENDERED.

. The jumper was discovered by a meter reader who noticed the broken seal. When asked why the broken seal had not been reported before if the jumper had been in place for three years, the expert explained the utility company, realizing meter jumping was a serious problem, began implementing a program in 1971 to eliminate the practice, but was delayed by a manpower shortage. Resealing of the City’s 200,-000 meters was begun in 1975, section by section. The program was finally extended into defendant’s section of the City in August, 1976, and the jumper was discovered immediately.

. Kilowatt hour readings each month, as shown by the billing records for 1971 through 1978, are tabulated as follows, the first column showing the average monthly readings exclusive of the suspect period, the second column showing the average monthly readings during the suspect period, and the third column showing the percentage difference representing the reduction:
I II III
January 1027 325 68%
February 1022 399
March 1164 642 45%
April 1944 1193 39%
May 3180 1950 39%
June 4638 2588
July 3270 2313
August 3714 2655
September 2994 1616 46%
October 1418 889 37%
November 1105 483 56%
December 1236 322 74%