YELVERTON, Judge.
Valley Electric Membership Corporation, Inc. (VEMCO), a utility cooperative, filed suit against Boise Southern Company and Vancouver Plywood Company for electrical energy allegedly used without payment. The defendants filed a motion for summary judgment which was subsequently granted. From that judgment the plaintiff appeals. We reverse and remand for further proceedings.
VEMCO’s suit alleged the following facts. In 1976 it entered into a contract with the defendant Vancouver Plywood to provide electrical energy for the operation of the sawmill owned by the defendants and located in Gandy, Louisiana. On June 23, 1983, VEMCO discovered that one of the metering devices measuring the electrical current sold to defendants was not operating properly. An inspection revealed that the malfunction occurred in March 1980 and that defendants had used plaintiff’s electricity from March 1980 to June 1983 without payment. Plaintiff alleged the value of the unpaid electricity to be $257,636.39. Plaintiff amended its petition to allege that one of defendants’ employees discovered that one of the instrument transformer wires pulled loose or broke causing the metering device to malfunction. Plaintiff also alleged that defendants’ employees or log contractors caused the wire to break by piling logs in or around the metering device.
In response to this petition the defendants filed a motion for summary judgment. Attached to the motion were the affidavits of Richard Cox, Controller for Boise Southern, and Edward Neel, Foreman of the Gandy Sawmill. Richard Cox’s affidavit stated that Boise Southern timely paid all charges for electrical service submitted by Valley during March 1980 through April 1983. The affidavit of Mr. Neel declared that between March 1980 and April 1983 he did not witness or receive any reports of anyone tampering with the meters.
At the hearing defendant argued that La. R.S. 45:845 and 846 prohibit VEMCO from estimating charges for electricity and that VEMCO’s rules and regulations did not authorize VEMCO to estimate the bill.
*964 The trial court evidently accepted defendant’s argument and granted the motion for summary judgment.
As the Supreme Court stated in Fitch v. J.N. Prather, et al, 502 So.2d 573 (La.1987):
“A motion for summary judgment cannot be granted unless the pleadings, deposition, answers to interrogatories, admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and mover is entitled to judgment as a matter of law.... A summary judgment is warranted only when reasonable minds must inevitably conclude the mover is entitled to judgment as a matter of law on the facts before the court. The mover bears the burden of establishing there is not a genuine issue of material fact in dispute, and any doubt is resolved against the granting of summary judgment and in favor of a trial on the merits to resolve disputed facts.... ”
Title 45 of the Louisiana Revised Statutes deals with public utilities and carriers. Section 845 of that Title reads as follows:
§ 845. Meters; furnishing
Every person engaged in the business of furnishing natural or artificial gas for heating, illuminating or other purposes, electricity for illuminating or for power or other purposes, water for domestic use or power or other purposes, and paid for by patrons by meter measure, shall furnish to every patron a meter properly tested and in good order, and shall arrange the meter so that the patron can, at any time, see the meter dial and ascertain how much gas, electricity or water is being consumed, and the amount for which he is liable.
Section 846 reads:
§ 846. Charges governed by meters; estimated bills
No person engaged in furnishing gas, water or electricity to consumers, to be paid for by meter measure, shall charge or receive, from any patron or consumer, payment for more gas, electricity or water than the meter indicates has been used by the consumer at the time for which payment is made and received; provided, however, that estimated bills may be rendered to and payment thereof collected from consumers for such periods and on such basis as may be approved or prescribed by the Louisiana Public Service Commission or other regulatory authority having jurisdiction over the person furnishing such service. The minimum charge contracted for with the municipalities shall not be affected.
The above quoted statutes merely require providers of electrical power to furnish consumers a meter properly tested and in good order, and entitle a consumer to insist upon a meter as the basis for the utility company’s right to demand payment of its bill for services. Louisiana Power & Light Co. v. White, 302 So.2d 358 (La.App. 4th Cir.1974), writ denied, 309 So.2d 338 (La.1975).
In the present case defendant was furnished a meter as the basis of its payment for services. Therefore, we find these statutes inapplicable. Also, these statutes do not prevent a utility company from recovering payment for consumption of electricity where there is evidence of tampering devices on the meter. See New Orleans Public Service, Inc. v. Delaney, 379 So.2d 842 (La.App. 4th Cir.1980) and Louisiana Power & Light Co. v. Bourgeois, 355 So.2d 597 (La.App. 4th Cir.1978).
VEMCO’s service rules and regulations authorize estimated bills under two circumstances. Rule XI provides in pertinent part:
D. Meter Tests at Request of the Consumer
The Cooperative shall, through a scheduled program and at its own expense, endeavor to maintain the meters within the allowable accuracy range of two percent.
Special tests may be made upon request of the consumer and payment of a meter test fee in advance. The decision for making special tests without charge shall be the decision of the Cooperative after consideration of the conditions surrounding the request and information regarding the meter. (Ref. XVI, C-l)
*965 In the event the test discloses that the meter is registering within the two percent limits of accuracy, no refund of the fee will be made. If the meter is found to be incorrect beyond the two percent range, the meter test fee will be refunded, and the electric bill will be adjusted for the three previous months. If the meter is found to be below the two percent accuracy range, the meter test fee will be refunded; and there will be no adjustment in the bill. In either case, the meter will be replaced and returned to the shop for calibration or repair.
In case of meters found not to be registering for any period, the Cooperative shall estimate the charge for the energy used by averaging the amounts registered over similar periods preceding or subsequent thereto, or over corresponding periods in previous years to determine the amount due.
E. Meter Seals
Seals or sleeving devices that are placed on meters or meter enclosures will not be broken or disturbed by anyone other than authorized representatives of the Cooperative unless approval is obtained from the Cooperative.
If the meters or other property belonging to the Cooperative are tampered or interfered with, the consumer being supplied through such equipment shall pay the amount which the Cooperative may estimate is due for service rendered but not registered on the Cooperative’s meter, and for such replacements and repairs as are necessary, as well as for costs of inspection, investigation, and protective installations.
Any evidence of such unauthorized action shall subject the consumer to the established Tampering Charge as a base charge before addition of the expense charges described in the immediately preceding paragraph (Ref. XVI, C-2).
Rule XI(D) provides for the replacement or repair of a meter when it is found to be below the two percent accuracy range. However, the rule does not allow VEMCO to make an adjustment in the bill. The rule allows VEMCO to estimate the bill only when the meter is found not to be registering for any period. The meter in the present case was registering, although, it is alleged, inaccurately.
Rule XI (E) allows VEMCO to recover payment due for services rendered but not registered on the meter due to tampering or interference. In such actions the plaintiff simply has to prove, by a preponderance of the evidence, the amount of electricity used during the relevant period in order to recover the balance due by the customer in excess of the amount billed and paid. The identity of the person who tampered with the meter is not a relevant fact in determining the amount of electricity used. See NOPSI v. Delaney, supra and Louisiana Power & Light Co. v. Bourgeois, supra.
In the present case the petition alleges defendants’ employees or log contractors caused the wire to break by piling logs around the meter, causing the meter to malfunction. Such actions, if proved, may constitute tampering or interference with the metering device. The defendants, in support of their motion for summary judgment, attached an affidavit from Edward Neel, the foreman at the sawmill, which revealed he did not witness or receive reports of tampering with the meters. The defendants also introduced an affidavit alleging that they paid for the amount of electricity used during that period as reflected by the meter. Defendants argue that this evidence was sufficient to sustain their motion for summary judgment, since VEMCG produced no affidavits to contradict these facts. However, these facts fail to prove the non-existence of tampering or interference with the metering device. No expert testimony was introduced to prove the meter had not been tampered with by defendants or any third parties. The defendants also failed to introduce any evidence showing the meter readings during the time in question were accurate reflections of the electricity used by defendants during that time. Therefore, the facts shown by defendants’ affidavits in support of their motion for summary judgment do not establish that they are entitled to sum *966 mary judgment as a matter of law. In fact, the plaintiff’s answers to defendants’ interrogatories, in which YEMCO presents statements, bills and other materials, show that there was a question as to whether the meter was intentionally or unintentionally damaged with a result that the meter did not accurately reflect the amount of electricity used. Therefore, the trial court erred in granting defendants’ motion for summary judgment.
For these reasons the judgment of the trial court is reversed and the case is remanded to district court for proceedings consistent with this opinion.
REVERSED AND REMANDED.