Richard T. Harriss *et al. vs.* James S. Orr *et ux.*

JULY 25, 1940.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Flynn, C. J. This bill in equity was brought by the assignees of certain judgment creditors of the respondent

James S. Orr to set aside a conveyance of real estate from him to the respondent Rena B. Orr, his wife, on the ground that it was fraudulent and void as to complainants, under general laws 1938, chapter 482, § 1; or, in the alternative, to have James S. Orr declared to be the equitable owner of said real estate, because of an alleged secret trust agreement with his wife, and to reach and apply such interest to the unsatisfied judgment of the complainants, and for other incidental relief.

In the superior court the respondents filed separately a demurrer, plea and answer to the bill of complaint, and upon motion of the complainants the demurrer and plea were stricken out. The cause then was heard on bill, answer, replication and proof, whereupon a decree was entered declaring, in substance, that the title to the real estate was in complainants and that the conveyance in question was fraudulent and void as to them, and therefore a cloud upon their title; and ordering such cloud removed by canceling that and other conveyances of record contrary to the title of complainants, and divesting respondents of all their right, title and interest in said real estate, excepting the wife's dower. The cause is before us upon the respondents' appeal from that decree.

According to the evidence the following are material facts. The complainants, as assignees of their predecessors in a brokerage business, are holders of an unsatisfied judgment obtained against the respondent James S. Orr, who will hereafter be referred to as Orr, in an action at law for the balance due on his brokerage account. This judgment was obtained on October 31, 1932. The respondent Rena B. Orr at no time was the customer or debtor of the complainants or their assignors.

In January 1923, Orr purchased the Oakdale Manufacturing Company, a corporation manufacturing oleomargarine, from Minnie Lestrade for $6000, payable $2000 in cash and

the balance in four promissory notes of $1000 each dated January 18, 1923 and payable in six, nine, twelve and fifteen months respectively. On February 14, 1923, before any of these notes were due, Orr conveyed the real estate in question to his wife, who thereby qualified as surety on his recognizance in the federal court, where Orr was arraigned on February 15 and again on December 6, 1923, on a charge of conspiracy arising out of the Oakdale Manufacturing Company's failure to pay certain taxes.

It is conceded that no money consideration actually passed on this transaction, although there is some evidence in the record of advancements generally by the wife to the husband of money inherited by her after their marriage. There is also evidence that Orr purchased and fixed up the house before his marriage, intending to settle it upon his wife after their marriage, and that they lived together in it during the entire period in question. The real estate then had a tax value of "about $13,000 or $14,000" and was encumbered by a mortgage of "$4000". Orr's net assets, exclusive of this realty, was considerably more than his debts at that time. On November 7, 1923, the wife conveyed this real estate to her friend, Mary Chandler Cushman, a resident of Whitman, Massachusetts, in whose name the record title remained until October 7, 1930, when Mrs. Cushman reconveyed it to Mrs. Orr. No money consideration passed for either of these conveyances, but both were duly recorded as was the first conveyance from Orr to his wife.

On November 29, 1929, that is, before Mrs. Cushman's reconveyance to Mrs. Orr, the partnership of Harriss and Vose had brought a law action against Orr to recover a balance due on his alleged stock purchases, none of which were made until several years after Orr's conveyance to his wife. This action was commenced by an original writ of attachment upon the right, title and interest of Orr in the real estate in question. The plaintiffs therein, who are the com-

plainants' assignors, recovered judgment against Orr in that action in the amount of $14,736.73. Execution thereon was levied against his interest in said real estate, and a sheriff's sale thereunder was held on April 22, 1933, at which the plaintiffs therein purchased all of Orr's right, title and interest in the attached real estate for the sum of $500, leaving the execution, with interest, unsatisfied to the extent of $14,781.48. It is not denied that all of the rights of the plaintiff partnership in that judgment and execution have become, by pertinent transfers or assignments, vested in these complainants.'

At the time judgment was entered in such law action, on October 31, 1932, there was also pending in the superior court against Orr an action upon the Lestrade notes, which was not brought until July 6, 1929 by Minnie Lestrade's son, she having deceased without presenting or suing on any of the notes. This action was filed a very short time before the statute of limitations would have run. Because of that plaintiff's failure to provide a bill of particulars, as ordered by the court on motion of Orr, that action has never been further prosecuted by or on behalf of the holder of the Lestrade notes.

There was also evidence that, substantially, between 1923 and 1929, Orr carried large policies of life insurance; that he owned securities on the strength of which collateral a bank in Boston, where he had other business interests, had loaned him $79,900; that he had other property and business interests totaling many thousands of dollars in excess of his indebtedness; and that later banking failures and the collapse of the values of securities reduced his financial condition very materially from what it had been at the time of the conveyance.

On June 3, 1933, James S. Orr filed a voluntary petition in bankruptcy and has not been discharged. Among the claims listed was one upon the Lestrade notes, with the

notation that the liability thereon was disputed; and also the claim of the complainants upon the balance of their judgment. Both of these claims were eventually allowed by the referee in bankruptcy, but apparently no dividends were paid.

The instant bill was brought in the alternative, first, under G. L. 1938, chap. 482, § 1, to set aside as void a conveyance allegedly made to hinder, delay and defraud creditors and to remove the cloud on complainants' title resulting from such fraudulent conveyance; or second, as a creditor's suit to reach and apply the equitable interest of the respondent Orr in said real estate to which his wife allegedly held legal title for his benefit under a secret trust agreement with him.

The cause apparently was tried and decided on the first aspect of the bill, namely, that the complainants, although not a creditor existing at the time of the conveyance from Orr to his wife in February 1923, were nevertheless entitled to relief under chap. 482, § 1, on the ground that there was an existing creditor (Lestrade) at that time; that such conveyance was made to hinder, delay or defraud an existing creditor and was therefore void under the statute also as to these subsequent creditors, the complainants; and that the cloud upon complainants' title, which was created by such conveyance, allegedly fraudulent under the statute, should be removed by canceling certain conveyances of record and requiring the respondents to convey to the complainants all their right, title and interest, excepting the wife's dower.

The respondents first contend that their demurrer and plea were erroneously stricken out without a hearing on either of them. However, in view of our conclusions upon the merits of the cause, we need not consider these contentions in detail. Since the bill of complaint, the decision of the trial justice, and the decree are based substantially upon the first aspect of the bill of complaint, the immediate ques-

tion is whether the complainants are entitled in the circumstances of this cause to the benefit of chap. 482, § 1. In our opinion the trial justice was in error in his findings that the complainants, under the circumstances appearing in the evidence in this cause, were entitled to relief under this statute and to the decree as entered.

Our statute, now chap. 482, § 1, is in substance a reenactment of the English statutes of fraudulent conveyances, 13 and 27 Elizabeth, with certain omissions which are not material here. *Tiernay* v. *Claflin*, 15 R. I. 220. The English statutes, however, declared all conveyances void that were made "to hinder, delay and defraud creditors *and others*". (italics ours) The words "and others" are important because, apparently under these express words, the early English cases extended the benefits of such statute to subsequent creditors. It is doubtful, we think, if such decisions would have been reached, if the statute had not expressly included creditors "and others".

Therefore, the failure of our general assembly to include the words "and others" in its enactment of our statute, although otherwise following substantially the English statutes, is significant and throws such light on the question whether our legislature ever intended by this statute to benefit subsequent creditors equally with existing creditors, as the complainants substantially contend. If it had been so intended, it is difficult to explain why they omitted the words "and others", when otherwise the form and substance of our statute was being patterned closely upon this portion of its English predecessor.

Further, no amendment to that effect has ever been made since the statute was adopted. No case in Rhode Island under it has been cited by the complainants, nor have we found any, where the benefits thereof were extended to a subsequent creditor. This fact also is significant, as it would seem to indicate a long-accepted construction of this

statute, by the bar, as being intended only for existing creditors.

This is borne out to a considerable extent by the nature and sweeping effect of this statute. As to that, this court has approved the rule as stated by Bigelow that, "whether a gift by a debtor is to be regarded as made with intent to defraud his creditors is now generally considered to turn upon whether the debtor was at the time in a situation to make the gift in justice to his creditors, *i. e.*, without delaying them in the enforcement of their rights"; and has held that: "The validity of the conveyance is to be determined not by the debtor's intention, even if honest, but by the effect on the creditor's right of recovery." *Tanner* v. *Whitney*, 52 R. I. 391, 394. See also *Savoie* v. *Pion,* 52 R. I. 422.

For these reasons it is difficult to interpret the language of our statute as intended to aid a subsequent creditor, where the debt was not even in contemplation for many years after the debtor's voluntary conveyance and had no connection therewith. In our opinion such language and statute were intended to benefit only those who might reasonably be classed, in contemplation of law, as existing creditors at the time of such conveyance.

Assuming, however, a more favorable interpretation of the statute, whereby a subsequent creditor may obtain the advantage thereof, we are of the opinion that these complainants would not be entitled to recover thereunder upon the evidence in this cause. Apparently, according to some early English and American cases, under similar statutes, a voluntary conveyance by a debtor at a time when there was an existing creditor was conclusively presumed, by operation of law, to be void as against all creditors, existing and future. The ground for this rule, generally speaking, appears to have been that a man must be held responsible for the necessary consequences of his act. However, such rule has been modified in English and in most jurisdictions in America, so that

the presumption of fraud is no longer conclusive, but may be rebutted by evidence. *Lloyd* v. *Fulton,* 91 U. S. 479. See also *Ga Nun* v. *Palmer,* 216 N. Y. 603. Generally speaking, the authorities prevailing now in America may be grouped as applying either of two principal rules.

According to the first of these rules, the ultimate question to be determined is always whether such a voluntary conveyance was fraudulent, and that question is the same whether the conveyance is attacked by an existing or subsequent creditor. The only difference between such creditors is the method of required proof. "When an existing creditor attacks the conveyance, and shows that his debt was incurred before, and was existing at the time when the conveyance was made, the law, without further proof, raises a *conclusive presumption* of fraud so far as that creditor is concerned. When, however, the conveyance is attacked by a subsequent creditor, he *must prove fraud as a fact*—that is, 'an actual fraudulent intent to defraud some creditor.' By some creditor is meant any creditor, either existing at the time when the conveyance is made or subsequently." *Washington National Bank* v. *Beatty,* 77 N. J. Eq. 252, 255. (italics ours)

According to the second of these rules, which prevails in a majority of jurisdictions in this country, a subsequent creditor apparently must prove facts which show an actual intent on the debtor's part to defraud that creditor; that is, a contemporary purpose on the part of the debtor to defraud the subsequent creditor, individually or at least as one of a class, by conveying his property and thus diminishing his estate to the detriment of that creditor's right of realization. Stated another way, this rule has been crystallized as requiring that a subsequent creditor must prove some reasonable relation between the act and circumstances of the debtor at the time of such a conveyance, and the accrual of the liability or debt. Applying either of these rules, we are of the opinion that the trial justice erred in finding that the evidence proved Orr's contemporary purpose to defraud

the complainants, as subsequent creditors, and that they were entitled to have Orr's voluntary conveyance to his wife set aside as fraudulent and void as to them under this statute.

According to the first of the above-stated rules, the complainants would be entitled at best to a presumption of fraud upon proof of the existence of a creditor at the time of the debtor's voluntary conveyance. But that was merely a presumption of fact and was rebuttable by evidence that Orr was neither insolvent at the time of the conveyance nor was he made so by it; and that he was in a situation to make the gift in justice to his existing creditors. The evidence shows that the net worth of his assets at that time, and for a considerable time thereafter, was more than ample to satisfy the existing Minnie Lestrade claim, without hindering or delaying her in the enforcement of her rights. If that be so as against an existing creditor, *a fortiori,* such evidence would defeat a subsequent creditor's claim of fraud. Moreover, the further question might be raised, if necessary, whether in this state such a mere presumption of fact did not disappear entirely from consideration as soon as the other contrary evidence was introduced. See *Colangelo* v. *Colangelo,* 46 R. I. 138; *Gilmore* v. *Prior,* 52 R. I. 395; *Van Ausdall* v. *Van Ausdall,* 48 R. I. 106, 110.

In any event, we think there is not sufficient evidence to support a conclusion that the conveyance was made by Orr with "an actual fraudulent intent to defraud *some creditor*", as required of subsequent creditors, if they would recover under the above-stated first rule. (italics ours) The nearest approach thereto is some evidence of a disposition upon the part of his wife (and perhaps Orr), *after* the conveyance to her, to attempt to save the property from possible action against it by the United States, if and when that government might later become a creditor. But the criminal case of the United States against Orr never materialized, and the uncontradicted evidence shows that the United States never became his creditor.

In our opinion, there is not sufficient evidence to justify a finding of a contemporary intent on Orr's part to delay or hinder the payee or holder of the Lestrade notes, who was the only existing creditor at the time of the conveyance, and whose existence as a creditor is relied upon by the complainants in order to obtain the aid of this statute. The evidence does not show any actual intent to defraud Mrs. Lestrade or her son, and fails to establish that the Lestrades were in fact hindered or delayed by this conveyance in the enforcement of their rights, if any; nor can such intent be reasonably inferred. The fair conclusion on the record here is that any delay relating to the enforcement of the Lestrade claim was clearly due to their own failure and refusal to prosecute that claim, and not in any way due to this conveyance or its effect on Orr's financial condition.

No complaint was made then or now by that creditor, or her son, that they were delayed, hindered, or defrauded; or that this conveyance could not have been made in justice to Orr's creditors at that time; and such creditor was not made a party to this suit. The complainants, who never became a creditor until several years after the conveyance, insist upon using the Lestrade creditor as a necessary basis to invoke the aid of equity under this statute; but, by their bill and contention, they exclude such creditor entirely from sharing in any possible recovery. Under all the circumstances, we are of the opinion that the complainants have not established a cause for relief under this statute, even if the first of the rules above mentioned is applied to the evidence.

If the second rule be applied, which apparently is the one now prevailing in the greater number of jurisdictions in America, the complainants would fail for a stronger reason. The evidence admittedly does not purport to show any contemporary actual intent on the part of Orr, at the time of the conveyance, to defraud these complainants or any class to which they might belong in contemplation of law. There

is no evidence of any reasonable connection or relation between the act of the debtor, in making the voluntary conveyance to his wife, and the extension of credit by the complainants to Orr several years thereafter. Indeed, the evidence does not show that Orr, at the time of the conveyance, had any contemplation of doing business at any time with the complainants or their assignors.

Considered with the evidence that shows that Orr was not insolvent or made so by this conveyance, and that he actually had, at that time and for some years thereafter, ample assets to pay all his existing debts and therefore was "in a situation to make the gift in justice to his creditors, *i. e.*, without delaying them in the enforcement of their rights", as required by *Tanner* v. *Whitney, supra,* the complainants' cause must fail, if we apply the second and prevailing rule. Therefore, under either of the rules above set forth, the trial justice was in error in finding upon this evidence that the title to the real estate in question was in the complainants, and in setting aside Orr's voluntary conveyance to his wife as fraudulent under chap. 482, § 1, and in according the full relief prayed for as to removal of the cloud on complainants' title.

But the complainants also contend that they are entitled to recover upon the second aspect of their bill, namely, as a creditor's suit to reach and apply this property to their unsatisfied judgment, on the ground that it equitably belonged to Orr under a secret trust agreement with his wife, whereby she held the bare legal title for his benefit. The sufficient answer to this contention might well be that the cause was not tried and decided upon such a theory, although there may be in the prayers of the bill some basis for this contention. The trial justice did not find for the complainants on such a ground. However, if the bill may be so considered, the complainants had the burden of proving the secret trust agreement which it alleged. There was no direct evidence on that issue. Conceding that this may be proved

380

by circumstantial evidence, we do not think such an agreement has been established here by a fair preponderance of the evidence. The most that can be said, in our opinion, is that there were some suspicious circumstances in evidence; but mere suspicion is not to be substituted for evidence. The so-called "badges of fraud", which are relied upon by the complainants, are mostly subsequent to the conveyance and are not sufficient, in our opinion, to overcome the weight of the uncontradicted evidence in the cause, which was not brought until many years after the conveyance.

We are of the opinion, upon consideration of all the evidence, that the complainants have not proved their cause as alleged in the bill of complaint and the bill should be dismissed.

For the reasons stated, the respondents' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with directions to enter a decree denying and dismissing the bill, in accordance with this opinion.

*Harold R. Semple, Matthew W. Goring,* for complainants.

*Edward M. Sullivan, John J. Sullivan,* for respondents.