## JAMES F. SULLIVAN, JR. *vs.* DISTRICT OF COLUMBIA PAPER MILLS, INC.

DECEMBER 23, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

BAKER, J. This action of assumpsit was heard without a jury by a justice of the superior court. He rendered a decision for the defendant, and the case is now before this court on the plaintiff's single exception to that decision.

The plaintiff's declaration contains the common counts and a count setting out a contract allegedly entered into by the parties, substantially to the effect that the plaintiff would receive from the defendant a commission of 5% on all orders which the latter solicited and received for its rayon coated paper products, provided that the goods were not sold to one of the plaintiff's customers. In return the plain-

tiff was to furnish his services to the defendant in order to instruct the latter in the manufacture of said rayon coated products.

The plaintiff alleges that he performed his part of the said contract, including the furnishing to the defendant of all data and information required by it, and that the defendant is now using his process, so called, in connection with its manufacture of said paper products. The defendant, however, denies that it owes the plaintiff any money by reason of any services performed for it by him or under any alleged contract or agreement between the parties.

In general, the evidence shows that the plaintiff, for some years prior to the transactions involved in this case, had been in the business of handling paper products, chiefly as a salesman. He had, however, made some experiments in producing certain kinds of paper, and had developed a method whereby rayon fibers were applied to paper so as to give it the appearance of cloth. He had a model machine upon which he worked and made tests, but he did not actually produce goods in volume. The plaintiff's method or process, so called, was not patented. The defendant company also, for some considerable time, had been experimenting along the same line and was producing, by a method in the main similar to the plaintiff's, a rayon coated paper which, while salable, it apparently desired to improve upon. The plaintiff's method varied slightly in certain particulars from that which the defendant was using.

In 1931 the parties had had some discussion relative to the production of rayon coated paper but nothing then developed in that connection. In 1938, however, the parties again took the matter up by correspondence and by conferences. At that time the defendant's general manager came to Providence to see the plaintiff's machine operate, and the plaintiff went to the defendant's place of business in Washington, D. C., took two parts of his machine with him, and spent about a week in the defendant's plant. The testimony is conflicting on the issue as to just what the plain-

tiff actually did in regard to suggesting changes in the defendant's equipment and in advising as to methods of production.

Thereafter, on August 24, 1938, the following letter was sent by the defendant to the plaintiff:

"This will confirm our conversation of this date concerning arrangements for you to sell Flock Coated Papers for us.

You are to have exclusive sales agency on our Rayon Coated Products. Your commission when the goods are sold at regular list prices is to be 25 per cent commission, to be paid when we receive remittance from the customer.

On all orders which we solicit and receive for Rayon Coated Products you are to receive 5 percent commission provided the goods are not sold to one of your customers. . . .

The above arrange(ment) is to continue as long as it is mutually satisfactory or until either of us gives three months notice of termination for cause."

Apparently the parties conducted business for some time under the above understanding.

In November 1939, however, a new arrangement was entered into whereby the plaintiff was to be paid a salary instead of a commission in connection with his sales. A letter from the plaintiff to the defendant under date of November 14, 1939 reads in part as follows:

"In accordance with telephone conversation with you on the 13th instant I am pleased to note that the arrangements pertaining to my representing your account in New England, details of which we recently discussed, have with the exception of the bonus, met with the general approval of your associates. It is my understanding that this particular point will be taken up next week when I am at your office and a plan that will prove satisfactory in this respect will be agreed upon at that time.

I have also noted that the arrangements referred to will take effect November 16th, 1939 and supersede any previous arrangements we might have had. . . ."

Later, on July 1, 1940, a third agreement as to the method of compensating the plaintiff was made by the parties. Such agreement by its terms was to end October 31, 1940. Its details are not important here. On November 30, 1940 the plaintiff's connection with the defendant terminated.

In the superior court the plaintiff, in substance, contended that, under the arrangement as evidenced by the letter of August 24, 1938, he was entitled to recover from the defendant the commission of 5%, hereinbefore referred to, through November 1940 up to the time the parties terminated their dealings with each other. As to this commission, he claimed in the superior court that it was in the nature of a royalty for the use of his process or method of production, so called, and that the arrangement provided for in the letter of November 14, 1939 did not affect or take the place of said commission.

At the trial it apparently was not disputed by the plaintiff that he had been paid by the defendant whatever was due him through November 1939 on such commission, but he introduced evidence tending to show that for a period thereafter covering approximately eleven months the amounts due thereunder aggregated $767.44, which sum he sought to recover in this case. The trial justice, however, in finding for the defendant, held, among other things, that the letter of November 14, 1939 superseded the entire arrangement of August 24, 1938, including the matter of the commission of 5%. The defendant also contested the plaintiff's claim on several other grounds which need not be referred to in detail in view of our disposition of the case.

While not admitting that the above holding of the trial justice was correct, the plaintiff, in arguing his exception before this court, merely contended that he was entitled under the common counts in his declaration to recover in *quasi* contract for services rendered the defendant in that he had introduced to it a new method of applying rayon flock to paper. In said argument and in his brief the plaintiff took the position, the correctness of which we do not

pass upon, that although the letter of August 24 purported to set out a contract between the parties, it was in fact not a real contract because it lacked mutual consideration. In support of that position the plaintiff called the court's attention to the clause in the last paragraph of said letter referring to the continuance of the arrangement only as long as it was mutually satisfactory to the parties.

In relation to the common counts upon which the plaintiff is thus now solely relying, the evidence was conflicting as to whether the plaintiff performed for the defendant any services for which he had not already been compensated and for which he would now be entitled to recover from the latter under said counts; and, if so, as to the extent of such services.

Assuming that the plaintiff performed some such services, we find in the record before us no evidence showing their reasonable value. If the plaintiff is attempting, under the common counts, to recover compensation for such services from the defendant, he has the usual burden of proof, as part of his case, to establish by competent evidence their reasonable value. In this connection he argues that the figure of $767.44, hereinbefore referred to as being the sum he contended was due him based on the aforesaid commission of 5%, furnishes such evidence in the absence of other proof on that issue and, in effect, is *prima facie* evidence of, or at least a guide to, the reasonable value of his alleged services. As supporting his position, he cites the cases of *Van Deusen* v. *Blum,* 18 Pick., (Mass.) 229 and *National Granite Bank* v. *Tyndale,* 176 Mass. 547.

In our opinion these cases are distinguishable from the instant case. It would appear that in the *Van Deusen* case there was evidence of the reasonable value of the services and materials furnished by the plaintiff. In the other cited case it was held, in substance, that on the evidence therein the plaintiff could recover on the common counts for money lent and for money had and received, and could use certain invalid notes merely "as evidence tending to show the terms

on which the loan was made . . . ." The proving of damages under the common counts for money loaned, or had and received, when the amount is not in question, is clearly not analogous to proving the reasonable value of services rendered, when no such value has been definitely fixed by the parties.

In the case at bar the services for which the plaintiff apparently now seeks to be paid are, according to the evidence, the giving of suggestions and advice as to methods of production, the altering and setting up of machinery, the spending of time in the defendant's plant and with its officers, the providing of data and information in connection with the production of rayon coated paper, and the like. There is no direct evidence as to the reasonable value of these services. Any finding by us as to such value would, therefore, be based on conjecture. The 5% commission, which was provided for under an arrangement now repudiated by the plaintiff, was apparently the consideration for a certain type of sales, and not for the plaintiff's alleged services as above described. Under all the facts and circumstances appearing in evidence, in our opinion said commission cannot properly be the measure of damages for fixing the reasonable value of plaintiff's said services. There is, therefore, in this case no evidence by which to determine such reasonable value.

For the reasons indicated, we find no sound basis for granting the plaintiff's request that he be given another trial, and his exception is overruled.

The case is remitted to the superior court for the entry of judgment for the defendant on the decision.

*David Hassenfeld*, for plaintiff.

*Littlefield, Otis & Knowles, John C. Knowles*, for defendant.