NARRAGANSETT ELECTRIC COMPANY

v.

**Bernard J. CARBONE et al.**

**No. 2004–195–Appeal.**

Supreme Court of Rhode Island.

May 17, 2006.

Shannon Gilheeney, Esq., for Plaintiff.

Gerard M. DeCelles, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The illegal diversion of electricity powers this appeal. An underground aluminum bypass conductor leading from the front yard of the defendants' home to an "unmetered" electrical panel in the garage allowed the defendants to receive a substantial amount of electrical service for which they were not billed. The defendants, Bernard J. and Marsha Carbone, appeal from a judgment of the Superior Court in favor of the plaintiff, Narragansett Electric Company, on its claims for conversion and unjust enrichment. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be decided summarily. After considering the written and oral submissions of the parties and examining the record, we are of the opinion that the issues raised in this appeal may be resolved without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

The defendants built their house at 90 Ann Drive in East Greenwich, Rhode Island, and began living there in December 1986. According to plaintiff, it supplied electricity to the home since December 18, 1986. In early 1998, plaintiff reviewed electrical consumption records for the premises and suspected low-usage patterns with respect to the known equipment on the premises. The review also revealed that the consumption pattern was "flat, without seasonal variations."

For a period of approximately eighteen months, Narragansett Electric monitored the amount of electricity that flowed into defendants' house by installing three check meters on the "pad-mounted transformer" [1] that was on the street in front of 90 Ann Drive. The plaintiff also replaced the billing meter at defendants' residence to ensure that it was reading accurately. The monthly readings on the check meters were compared with monthly readings taken on the billing meter located on the premises. From this investigation, plaintiff discovered that a large amount of electricity was flowing into defendants' home that was not being read by defendants' billing meter and for which defendants were not being billed.

On September 7, 2000, personnel from Narragansett Electric and the State Police entered 90 Ann Drive to execute a search warrant. During the search, Mr. Carbone disclosed the location of an underground bypass conductor that had been diverting electricity away from the home's billing meter to the unmetered panel in the garage. Narragansett Electric workers dug up the two ends of the bypass, conducted amperage tests on the wires emanating from both the metered and unmetered panels, and took an inventory of all items and appliances that consumed electricity on the premises. Thereafter, plaintiff presented defendants with a bill for the amounts of electricity that it believed defendants had consumed through the illegal bypass since 1986.

Subsequently, on December 20, 2000, plaintiff filed a civil action against defendants seeking damages for book account (count 1), conversion (count 2), unjust enrichment (count 3), and for a doubling of damages, pursuant to G.L.1956 § 9-1-2, that plaintiff otherwise would be entitled to if defendants should also be found criminally liable for larceny (count 4). [2] Before trial, on December 10, 2001, defendant Mrs. Carbone filed a motion for summary judgment on all four counts of the complaint. Two orders were entered on January 23, 2002, granting Mrs. Carbone's summary judgment motion on counts 1 and 4, but denying it on counts 2 and 3.

A bench trial was held before a trial justice of the Superior Court in August

---

1. A "pad-mounted transformer" feeds electricity from a site outside private property to that private property, unless the electric company determines that the customer has the potential to exceed a certain transformer capacity, in which case the customer is required to provide space on the private property to install a transformer. *Information and Requirements for Electric Service for National Grid USA* 38, 61 (2000).

2. Mr. Carbone was criminally charged on November 15, 2001, for larceny over $500 pursuant to G.L.1956 §§ 11-41-1 and 11-41-5 and for bypassing an electrical meter pursuant to § 11-35-9. The larceny charge was dismissed by the prosecutor pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. Mr. Carbone pleaded *nolo contendere* to the charge of bypassing an electrical meter, received thirty days probation, and was required to post the sum of $22,000 with the Registry of the Court for restitution to plaintiff pending the disposition of the present civil action.

2003. Before trial, defendants filed a motion *in limine* to preclude plaintiff from admitting any expert testimony on the grounds that plaintiff failed to disclose any expert witnesses who were expected to testify at trial in its answers to interrogatories. The trial justice denied the motion, noting that it was his understanding that plaintiff was not planning to call any "outside" expert witnesses. He said that any employee of plaintiff who had been disclosed as a lay witness during discovery was competent to testify in the form of facts or opinions about his or her given area of work for the company. The trial justice also granted defense counsel leave to renew his objection during the course of the trial depending on the scope of the proposed witnesses' testimony. Similarly, the trial justice held in abeyance defendants' pretrial motion requesting a *Daubert* hearing with respect to any expert witness.

At trial, plaintiff presented the testimony of five of its employees and introduced numerous exhibits to explain its investigation and calculations of lost revenue for unbilled electricity provided to defendants' home. Mrs. Carbone did not testify at trial, but plaintiff offered her pretrial deposition testimony as a full exhibit. Mrs. Carbone testified that she had lived at 90 Ann Drive since 1986, but did not know who did the original electrical work on the house. She said that the home was always gas-heated and had central air-conditioning since 1986. She was unsure when the heated in-ground pool was built, but believed that it was around 1998. Mrs. Carbone testified that she did not know whether the unmetered panel was in the house since it was built, and she had no idea about which appliances each of the two panels serviced. She said that she was unaware of the illegal bypass until after the search, when she heard of the accusations against her and her husband on a television news report.

At the close of plaintiff's evidence, both plaintiff and defendants made motions for judgment as a matter of law. The trial justice reserved on the motions. Mr. Carbone then testified that the bypass was not installed when the house was built in 1986, but rather in 1997 or 1998, when one Pat Saggerson did electrical work in connection with the regrading of the yard and installation of the pool, pool house, shrubs, air-conditioning, and exterior lights.[3] Mr. Carbone said that he did not have a bill from Mr. Saggerson's work because the two had a friendly relationship in which each would sometimes do work in return for work done by the other. Unlike Mrs. Carbone, who testified that they had central air-conditioning since 1986, he said that the electrical air-conditioning units were not in the home since it was built. He averred that his wife was mistaken about the time when the air-conditioning and the heated pool were installed. He also said that he did not use the electrical heaters in the garage because they did not work properly. Mr. Carbone said that he did not label the unmetered panel with the appliances shown on it except for one label for a "bug light," and did not know who did because it was a "used panel."

James D. Paliotta, an electrical contractor, also testified for defendants that he installed the air-conditioning units in the Carbones' house in 1997. At the close of all the evidence, defendants renewed their motions for judgment as a matter of law. The trial justice once again decided to reserve on the motions until he delivered his decision in the case.

On February 18, 2004, the trial justice issued his bench decision. He rejected

3. Both defendants testified that Mr. Saggerson is now deceased.

Mr. Carbone's contention that the bypass was installed in 1997, finding instead that it was installed in 1986, when the house was built. He found that "Mr. Carbone's testimony as it relates to the bypass having been installed in 1997 rather than 1986[was] not credible" in light of the inventory of usage that existed on the premises up to 1997. He said that it was "unlikely that the residence did not have an unmetered panel" since 1986 based on that inventory, and found that Mr. Carbone had knowledge of the presence of the bypass since 1986. The trial justice further found that the pool was not installed until 1997 and that the pool house and pool heater were not installed until 1998.

The trial justice also noted that plaintiff "presented detailed evidence" comparing the billed electricity usage to what it contended was the actual usage. Accordingly, he concluded that plaintiff sustained $147,832 in damages for loss of revenue as a result of the bypass, which figure factored in adjustments for the pool not being in use until 1997. He said that this significant figure must be understood in light of the multitude of electrical appliances inventoried at the premises, which he listed in some detail.[4] He also noted that defendants did not challenge plaintiff's revenue loss calculations "in any serious manner other than to baldly assert that it is speculation," and "offered no alternative calcula-tion." Based on this, the trial justice found that plaintiff had clearly met its burden of proof on damages.

On the first claim for book account, the trial justice found Mr. Carbone not liable after noting that summary judgment already had been granted in favor of Mrs. Carbone on that count before trial. On the claim for conversion, Mr. Carbone was found individually liable for $147,832, "the value of the electricity converted," plus $1,861, the "uncontroverted sum that plaintiff reasonably expended to detect and ascertain the illegal usage." Mrs. Carbone was found not liable for conversion because she did not have the requisite knowledge of the bypass. On plaintiff's claim for unjust enrichment, the trial justice found Mr. and Mrs. Carbone jointly and severally liable for $147,832, or "the value of the electricity that was received as a result of the bypass." Finally, after noting that count 4 (larceny) against Mrs. Carbone previously was dismissed, the trial justice found that Mr. Carbone also was not liable on count 4 because plaintiff offered no argument to support such a cause of action.

An order implementing the trial justice's decision was entered on February 24, 2004. A purported final judgment was filed on the same day; however, that judgment

4. As noted by the trial justice, defendants' copious electrical requirements included:

"a first floor with full kitchen, including an electric double oven, microwave, dishwasher, side-by-side refrigerator, electric griddle, t.v./vcr and gas stove; a living room with two air conditioning vents, stereo, t.v. and vcr. Three bedrooms, all of which contained air conditioning vents, t.v.[ ]s and vcr; a laundry room with a washing machine, electric dryer and t.v.; a dining room with one air conditioning vent, a living room with a large screen t.v./vcr, stereo, karaoke machine, a game room with video arcade machines, t.v., electric keyboard. A second living room, an office with a t.v., fax machine and air conditioning and three bathrooms. The lower level of the home consists of another full kitchen, complete with all major appliances, a living room with electrical appointment similar to those found on the first floor, a full bathroom and a utility room with many kitchen appliances. The residence also had extensive exterior lighting and a heated garage of sufficient size to house three automobiles. And, of course, there is the heated 20 by 40 foot inground pool with the adjoining pool house."

was not signed by either the trial justice or the court clerk. The defendants filed a notice of appeal on March 8, 2004. In a November 16, 2005 order assigning the case to this Court's show-cause calendar, the case was remanded to the Superior Court to obtain a signed judgment. On February 2, 2006, a signed judgment was entered.[5] On appeal, defendants allege five assignments of error that warrant reversal of the judgment.

## II

### Expert Testimony

The defendants' first argument on appeal is that the trial justice erred in allowing plaintiff to introduce expert testimony. They contend that the trial justice should have barred such expert testimony because plaintiff never supplemented its answers to interrogatories to disclose its expert witnesses. The defendants had propounded interrogatories to plaintiff that included a multipart question asking plaintiff to disclose information relating to any expert witness plaintiff expected to call to testify during trial. The plaintiff responded that no determination had been made at that time about whether any expert witnesses would be called and that it would supplement the answer in accordance with the Superior Court Rules of Civil Procedure, if necessary. The plaintiff did not supplement its answers. Although plaintiff never sought during the trial to qualify any of its witnesses as experts, on appeal defendants argue that the trial justice erred in admitting expert testimony.

The defendants assert that "Narragansett evidenced five witnesses, some of whom gave expert testimony and conclusions[;]" yet they identify only one such witness, Leo Dalbec, the administrator of revenue protection at Narragansett Electric at the time of its investigation on defendants. We previously have indicated that specific references to the record are necessary to allow this Court to conduct a meaningful review. *See, e.g., Waters v. Magee,* 877 A.2d 658, 666 (R.I.2005); *Falvey v. Women and Infants Hospital,* 584 A.2d 417, 419–20 (R.I.1991). Here, defendants have failed to direct our attention to any portion of the record in which any of the four unnamed witnesses may have provided "expert" testimony. We limit our review in this regard, therefore, to the testimony of Leo Dalbec.

■ The defendants challenge the trial justice's admission of Mr. Dalbec's testimony concerning his calculations of the amounts of unmetered electricity that the Carbones received since 1986. The defendants' argument that expert testimony was inadmissible because plaintiff failed to identify expert witnesses during discovery is essentially an argument that plaintiff violated Rule 33(c) of the Superior Court Rules of Civil Procedure, which requires that "[i]f the party furnishing answers to interrogatories subsequently shall obtain information which renders such answers incomplete or incorrect, amended answers shall be served within a reasonable time thereafter but not later than 10 days prior to the day fixed for trial." For a violation

---

**5.** This Court has stated that pursuant to Rule 58 of the Superior Court Rules of Civil Procedure, "a judgment must be set out on a separate document and signed by the Clerk in order to be final. Consequently, an appeal may only be taken after this procedure is complete." *Solomon v. Progressive Casualty Insurance Co.,* 685 A.2d 1073, 1074 n. 1 (R.I. 1996) (mem.). In the present case, although the notice of appeal was filed before the final signed judgment was entered, defendants' appeal was nonetheless valid, because "this Court treats the appeal as if it had been filed after the entry of judgment." *Dovenmuehle Mortgage, Inc. v. Antonelli,* 790 A.2d 1113, 1114 n. 1 (R.I.2002).

of this rule, Rule 37(d) of the Superior Court Rules of Civil Procedure provides the court with the discretion to "on motion * * * make such orders in regard to the failure as are just." We thus must decide whether the trial justice erred by not precluding plaintiff from introducing Mr. Dalbec's testimony.

■ "[T]he question of whether a witness is qualified to express an expert opinion is a matter that is committed to the sound discretion of the trial justice, and the exercise of such discretion will not be disturbed on appeal absent a showing of abuse." *Mangasarian v. Gould*, 537 A.2d 403, 405 (R.I.1988). As already noted, plaintiff did not attempt to qualify any of its witnesses as experts. This Court has recognized, however, that even when no motion is made before the lower court to qualify a witness as an expert, a trial justice nonetheless may have treated that witness as an expert, justifying our analysis under the deferential standard normally applied to the admission of expert testimony. *See New England Telephone and Telegraph Co. v. Clark*, 624 A.2d 298, 303 (R.I.1993); *see also Rossilli v. Iacovelli*, 88 R.I. 456, 459, 149 A.2d 709, 711 (1959) (stating that the abuse of discretion standard "is applicable in any case in which the qualification of a witness to testify to matters within his knowledge is questioned"). We have characterized expert testimony as that "of a mechanical, scientific, professional or like nature, none of which is within the understanding of laymen of ordinary intelligence, and where the witness seeking to testify possesses special knowledge, skill or information about the subject matter acquired by study, observation, practice or experience." *Morgan v. Washington Trust Co.*, 105 R.I. 13, 17–18, 249 A.2d 48, 51 (1969). Even if we agreed with defendants that some of Mr. Dalbec's testimony may be characterized as expert testimony, we are satisfied that the trial justice did not err in admitting such evidence.

■ Forbidding a party to call a witness after a Rule 33(c) violation "is a drastic sanction that should be imposed only if it is apparent that the violation has or will result in prejudice to the party asserting the violation." *Gormley v. Vartian*, 121 R.I. 770, 775, 403 A.2d 256, 259 (1979). We have made clear that such prejudice results when the party alleging a violation is surprised by the witness's testimony because the purpose of Rule 33(c) is "to prevent trial by ambush" and "to enable litigants to prepare for trial free from the elements of surprise and concealment so that judgments can rest upon the merits of the case rather than the skill and maneuvering of counsel." *Neri v. Nationwide Mutual Fire Insurance Co.*, 719 A.2d 1150, 1152 (R.I.1998) (quoting *Gormley*, 121 R.I. at 775, 403 A.2d at 259).

We are satisfied that Mr. Dalbec's testimony concerning plaintiff's calculations of unbilled electrical service did not come as a surprise to defendants and therefore did not result in prejudice. In *Neri*, we held that a Rule 33(c) violation was prejudicial to the defendant because the plaintiff did not disclose that he would testify as his own expert and thus the defendant did not have the opportunity to depose the plaintiff in that specific capacity as an expert on causation. *Neri*, 719 A.2d at 1152–53. In contrast, in the present case, defendants were on notice of the dollar amounts claimed for unmetered electricity from the bills that plaintiff submitted to defendants long before the trial. In addition, when defendants deposed Mr. Dalbec before trial, they had notice of the loss calculations and how they were computed from the complaint and from Mr. Dalbec's affidavit, which was attached and referred to therein. Moreover, plaintiff's answers to defen-

dants' interrogatories revealed the amounts claimed to be owed as well. Because of this prior notice, we are satisfied that defendants did not suffer a "trial by ambush" when Mr. Dalbec testified about the timing of the bypass installation and the loss calculations. *See id.* at 1152.

■ Moreover, Mr. Dalbec was an experienced employee of Narragansett Electric, testifying about matters within his areas of responsibility for plaintiff before a trial justice sitting without a jury. We are well satisfied that under these circumstances the trial justice was acting within his discretion in admitting the challenged testimony. As the trial justice noted, neither Mr. Dalbec nor any of the other witnesses was an "outside expert, so-called, who has been engaged outside of the employment of the utility to proffer specific opinion for compensation." We also observe that a trial justice in a jury-waived trial may be afforded great latitude to determine what testimony may be properly characterized as expert testimony. Here, the trial justice did not err in allowing Mr. Dalbec to testify.

■ Likewise, we reject defendants' contention that they were entitled to a *Daubert* hearing to determine the scientific validity of Mr. Dalbec's loss revenue calculations.[6] A party makes a proper mo-

tion for such an evidentiary hearing only when he or she sufficiently alerts the trial justice of the scientific issue at stake by presenting an affidavit or offer of proof to substantiate his or her claim that the opposing party's proposed expert testimony is scientifically invalid. *Roe v. Gelineau*, 794 A.2d 476, 483 (R.I.2002); *DiPetrillo v. Dow Chemical Co.*, 729 A.2d 677, 683 (R.I. 1999). The defendants in the present case offered virtually no explanation of why a *Daubert* hearing was necessary. We therefore are satisfied that the trial justice did not err in failing to hold a *Daubert* hearing concerning Mr. Dalbec's testimony.

## III

### Conversion

■ Next, defendants argue that the trial justice erred in finding Mr. Carbone liable for conversion because electricity is an intangible item that may not be converted and plaintiff failed to prove that Mr. Carbone "possessed" or "utilized" the electricity.[7] We consider the question of whether Mr. Carbone converted electricity to be a mixed question of law and fact. The rule of law on conversion is undisputed; the issue is whether the facts in this case satisfy the elements of conversion.

---

**6.** This Court has noted that in certain circumstances, it is necessary for a trial justice, in exercising his or her gatekeeping function in determining evidence admissibility, to hold a preliminary hearing to determine whether expert testimony is reliable and appropriate. *State v. Quattrocchi*, 681 A.2d 879, 883–84 (R.I.1996); *accord Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This includes an evaluation of: "(1) whether the proffered knowledge can be or has been tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or the potential error rate, and (4) whether the theory or technique has gained general acceptance in the relevant sci-

entific discipline." *Quattrocchi*, 681 A.2d at 884 (citing *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786).

**7.** The plaintiff responds that defendants failed to preserve this issue for appellate review because they failed to renew their motion for judgment as a matter of law at the close of the evidence. However, the transcript reveals that defense counsel did renew the motion at the close of the case. The plaintiff's argument that the issue was not preserved for appeal is therefore without merit. *See Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 287 (R.I.1999).

*See Johnston v. Poulin,* 844 A.2d 707, 714 (R.I.2004); *see also Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

■ "The findings of a trial justice sitting without a jury are entitled to great weight, and the 'resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence, are entitled to the same deference.'" *Hawkins v. Town of Foster,* 708 A.2d 178, 182 (R.I.1998) (quoting *Wickes Asset Management, Inc. v. Dupuis,* 679 A.2d 314, 317 (R.I.1996)). In the present case, the trial justice found that Mrs. Carbone could not be held liable for conversion because she lacked the requisite knowledge of the bypass in her home. Mr. Carbone, on the other hand, was found liable for conversion of unbilled electricity because the trial justice found that the elements of conversion had been proven sufficiently against him and there was no persuasive authority that electricity may not be the subject of a conversion action.

■ "To maintain an action for conversion, [a] plaintiff must establish that [it] was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." *Montecalvo v. Mandarelli,* 682 A.2d 918, 928 (R.I.1996). Then, "the gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." *Fuscellaro v. Industrial National Corp.,* 117 R.I. 558, 560, 368 A.2d 1227, 1230 (1977). This intentional exercise of control over the plaintiff's chattel must "so seriously interfere[ ] with the right of another to control it that the [defendant] may justly be required to pay the other the full value of the chattel." *Montecalvo,* 682 A.2d at 928 (quoting Restatement (Second) Torts § 222(A)(1) at 431 (1965)).

"At common law any tangible chattel that could be lost and found could be the subject of conversion." *Montecalvo,* 682 A.2d at 928. However, "the tort of conversion at common law excluded intangible personal property because intangibles, like land, could not be lost or found." *Id.* Consequently, this Court has held that "a conversion action will not lie for a partnership interest or other intangible property right that is not manifested by a tangible instrument, such as a written agreement, a bankbook, or a promissory note, that may, in turn, be converted." *Id.* at 929; *see also Iavazzo v. Rhode Island Hospital Trust Co.,* 51 R.I. 459, 462–63, 155 A. 407, 408 (1931).

This Court has not had occasion to decide whether electricity is the type of tangible personal property that may be converted. Other courts, however, have suggested that electricity has the characteristics of tangible personal property. *See, e.g., Curry v. Alabama Power Co.,* 243 Ala. 53, 8 So.2d 521, 526 (1942) (concluding that electricity is tangible personal property because it is made up of electrons that have mass or weight, may be detected by the senses of taste, smell, and touch, and moves through the circuit in the same way as a flow of water would move); *Davis v. Gulf Power Corp.,* 799 So.2d 298, 299–300 (Fla.Dist.Ct.App.2001) (holding that electricity has the characteristics of tangible personal property for purposes of a Florida tax statute); *Texas Eastern Transmission Corp. v. Benson,* 480 S.W.2d 905, 909 (Tenn.1972) (characterizing electricity "as a taxable item of tangible personal property"); *see also G.E. Lothrop Theatres Co. v. Edison Electric Illuminating Co. of Boston,* 290 Mass. 189, 195 N.E. 305, 307 (1935) (declining to decide whether electricity can be converted, but suggesting that assuming *arguendo* that it may be, the defendant would not be liable because

he did not intend to take title to the electricity).

Moreover, some courts have held outright that electricity may be the subject of a conversion cause of action. *See DeLong v. Osage Valley Electric Cooperative Association*, 716 S.W.2d 320, 323–24 (Mo.Ct. App.1986) (holding that a jury could reasonably infer a conversion of electricity by the plaintiffs' tampering with an electrical meter for the purpose of depriving the defendant of payment for electricity used); *Good Sports of New York, Inc. v. Llorente*, 280 A.D.2d 261, 720 N.Y.S.2d 119, 119–20 (2001) (holding that the defendant-landlords had converted electrical services when the evidence showed that their building was charged $0 for electricity in its common areas during three years when its wires were improperly hooked up to the plaintiff-tenants' meter). In addition, although it was not addressing whether electricity may be the subject of a conversion action, the United States Supreme Court has said that, "[h]owever lacking it may be in body or substance, electrical energy, nevertheless, possesses many of the ordinary tokens of materiality. It is subject to known laws; manifests definite and predictable characteristics; [and] may be transmitted from the place of production to the point of use * * *." *Utah Power and Light Co. v. Pfost*, 286 U.S. 165, 180, 52 S.Ct. 548, 76 L.Ed. 1038 (1932).

We agree with these courts that electricity possesses many of the characteristics of tangible property, even if its current may not be "lost and found" in the traditional sense. *See Montecalvo*, 682 A.2d at 928. Moreover, in our state, it is a misdemeanor to bypass an electrical meter to receive unbilled electrical service. *See* G.L.1956 § 11–35–9. We see no persuasive rationale for holding that electrical current may be fraudulently consumed or diverted, but that those whose electricity was wrongly appropriated may not recover the loss of the value of that electricity in a civil action for conversion.

We also are satisfied that plaintiff sufficiently proved conversion of electricity in the present case. First, it was undisputed that plaintiff originally possessed or was entitled to possess the unbilled electricity that ended up in the Carbone home. Second, Mr. Carbone, through his use of the underground bypass, then diverted the electrical current from plaintiff's transformer pad into his home without plaintiff's consent. Finally, the evidence showed that Mr. Carbone exercised dominion or control over that electricity by using it in his home to power a portion of his impressive inventory of electrical appliances.

The defendants' argument that there was no evidence that they actually "utilized" the unmetered electrical currents is without merit. As the trial justice noted, there was a multitude of electrical appliances inventoried in the house, and the evidence was uncontradicted that at least some of these appliances were not receiving electricity through the main billing meter on the house. Moreover, there was evidence that the unmetered panel's switches were labeled specifically for certain of those appliances. As the trial justice said, defendants offered no credible evidence that they did not use the electrical current running through the underground bypass to the unmetered panel and into the Carbone home; nor did defendants challenge or refute the accuracy of the check meter readings or the resulting calculation of unbilled electricity.

Notably, at no time did Mr. Carbone dispute that an illegal bypass was installed on his premises; yet, he asks this Court to conclude that although electricity got through the bypass to his home, plaintiff did not prove that the Carbones "utilized"

the electrical current. Affording the proper deference to the trial justice's inferences, factual findings, and conclusions concerning this mixed question of law and fact, we cannot say that the trial justice clearly was wrong in holding Mr. Carbone liable for conversion.

## IV

### Unjust Enrichment

 The defendants also challenge the trial justice's ruling that Mr. and Mrs. Carbone are jointly and severally liable for unjust enrichment. They argue that plaintiff did not prove that a measurable benefit was conferred on defendants because it failed to trace the unmetered electricity from the illegal bypass into the specific appliances allegedly powered by the unbilled electricity in the home. In addition, defendants contend that Mrs. Carbone did not "appreciate" the benefit of the illegal bypass because she had no knowledge of its existence.

 Recovery for unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them. *R & B Electric Co. v. Amco Construction Co.*, 471 A.2d 1351, 1355 (R.I.1984). To recover under a claim for unjust enrichment,

"a plaintiff is required to prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof." *Bouchard v. Price*, 694 A.2d 670, 673 (R.I.1997) (quoting *Anthony Corrado, Inc. v. Menard & Co.*

*Building Contractors*, 589 A.2d 1201, 1201–02 (R.I.1991)).

We are satisfied that the trial justice did not err in finding that these three elements were met in the present case against both defendants. First, a benefit was conferred on defendants. This Court has held that a benefit is conferred when improvements are made to property, materials are furnished, or services are rendered without payment. *See, e.g., Dellagrotta v. Dellagrotta*, 873 A.2d 101, 113–14 (R.I.2005) (home improvements); *Landmark Medical Center v. Gauthier*, 635 A.2d 1145, 1148–49 (R.I.1994) (medical services); *Newport Oil Corp. v. Viti Bros., Inc.*, 454 A.2d 706, 706–08 (R.I.1983) (gasoline deliveries made to the defendant service station for resale); *Providence Steel & Iron Co. v. Flammand*, 413 A.2d 487, 487–88 (R.I.1980) (steel building components); *Best v. McAuslan*, 27 R.I. 107, 108–10, 60 A. 774, 774–75 (1905) (medical services). Here, the electricity that flowed from the transformer pad, through the underground bypass, and into the unmetered panel in the Carbones' garage, is analogous to other services for which this Court has upheld awards of payment to plaintiffs under an unjust enrichment theory. Accordingly, we think that the evidence warranted the trial justice's inference that the unpaid electricity benefited defendants in that they were able to power at least a portion of their large home for free.

 The defendants, however, contend that no measurable benefit ever was conferred on them because there was no proof at trial that the electricity that went out of the transformer actually went into the Carbone home. This argument lacks merit. As in most civil cases, plaintiff bears the burden to prove each element by a preponderance of the evidence, meaning that the trier of fact "must believe that the facts asserted by the proponent are more

probably true than false." *Parker v. Parker,* 103 R.I. 435, 442, 238 A.2d 57, 61 (1968). This Court has indicated that even when there is no direct evidence on a particular issue, a fair preponderance of the evidence may be supported by circumstantial evidence. *See Harriss v. Orr,* 65 R.I. 369, 379–80, 14 A.2d 674, 679 (1940). Moreover, other courts have determined that circumstantial evidence of investigations done by electric companies, comparing the ratio of metered electricity to total energy usage during specified time frames to ascertain the amount of unbilled usage, was enough to support the inference that the unbilled electricity reached a consumer's property and that such consumer therefore should pay for that unbilled service. *See, e.g., Illinois Power Co. v. Champaign Asphalt Co.,* 19 Ill.App.3d 74, 310 N.E.2d 463, 469–70 (1974); *New Orleans Public Service, Inc. v. Delaney,* 379 So.2d 842, 842–43 (La.Ct.App.1980); *Northern States Power Co. v. Lyon Food Products, Inc.,* 304 Minn. 196, 229 N.W.2d 521, 525–26 (1975).

We believe that in this case, plaintiff presented enough circumstantial evidence for the trial justice to determine that a benefit was conferred on defendants by a fair preponderance of the evidence. The plaintiff presented extensive testimony concerning the electrical current that registered on the check meters, but did not register on the billing meter assigned to the Carbones' home. The evidence further revealed that the unmetered panel connecting to the illegal bypass was labeled with certain appliances, and that there were electrical devices inventoried in the Carbone home that did not connect to the metered panel for which electricity the Carbones were billed. Based on this circumstantial evidence, the trial justice properly could infer that a benefit was conferred on defendants through their use of the illegal bypass to divert electricity.

The defendants also argue with respect to the second element of unjust enrichment that there was no evidence that Mrs. Carbone "appreciated" the benefit of the electricity because she was unaware of the bypass's existence. We disagree. On the contrary, we are satisfied that the trial justice was warranted in finding Mrs. Carbone jointly and severally liable for unjust enrichment because she was a homemaker who paid some of the electric bills during the relevant time, and from that fact an inference properly could be made that she used the home's many appliances, some of which were powered by the unbilled electricity.

██ Even more importantly, addressing the third element of unjust enrichment, we conclude that it would be inherently unjust to allow defendants to have bypassed the billing meter and then deny the electric company compensation for the services so purloined. This Court has said that " '[t]he most significant requirement * * * is that the enrichment to the defendant be unjust.' " *R & B Electric Co.,* 471 A.2d at 1356. If the plaintiff can prove the reasonable value of services rendered without payment, the defendant justly may be compelled to pay for those services. *See Best,* 27 R.I. at 111, 60 A. at 775; *see also Sullivan v. District of Columbia Paper Mills, Inc.,* 67 R.I. 330, 334–35, 23 A.2d 765, 767–68 (1941). As the trial justice noted, the evidence plaintiff presented of the loss calculations for amounts defendants owed went uncontradicted at trial. Based on the circumstantial evidence that unbilled electricity flowed through the illegal bypass into the Carbone home and plaintiff's ability to show the reasonable value of that stolen electrical service, it would be inequitable to deny plaintiff the opportunity to be paid for the unbilled service.

## V

### Statute of Limitations

The defendants also argue that plaintiff's action was time-barred because the trial justice found that the illegal bypass was installed in 1986, and plaintiff did not file its action until 2000, more than ten years after the cause of action accrued. The plaintiff responds that the statute of limitations issue was not preserved for appellate review because it never was raised at trial, and that, regardless, the trial justice properly applied the discovery rule in finding the action timely.

 The trial justice stated that defendants raised the statute of limitations issue for the first time in their post-trial brief. In fact, however, defendants averred a statute of limitations defense in their answer to plaintiff's complaint. Under Rule 8(c) of the Superior Court Rules of Civil Procedure, the defense of the statute of limitations must be affirmatively raised. The failure to plead this affirmative defense results in its waiver. *LaBounty v. LaBounty*, 497 A.2d 302, 305 (R.I.1985). Because defendants both pled the statute of limitations defense in their answer, and argued it before the trial justice, we are satisfied that the issue was not waived and is properly preserved for our review. *See State v. Lambrechts*, 585 A.2d 645, 646 (R.I.1991); *see also Hanley v. State*, 837 A.2d 707, 711 (R.I.2003).

 The statute of limitations argument presented to the trial justice in defendants' post-trial memorandum was that, if the court found that the bypass was installed in 1986, the entire action would be time-barred. The trial justice was correct to reject this reasoning. The causes of action for conversion and unjust enrichment encompassed an ongoing and continuous theft of electricity from 1986 to 2000. The accrual of such actions, therefore, was not fixed in time as of the date the illegal bypass was installed.

 On appeal, however, defendants raise an additional argument, asserting that "[e]ven if the Court were to consider the bypass a continuing theft of electricity, then the damages would only extend ten (10) years, not fourteen (14)." We deem this aspect of defendants' appellate argument waived. *See Roe*, 794 A.2d at 482 ("[U]nder the raise-or-waive rule, this Court refrains from reviewing issues not raised in the trial court."). Moreover, defendants fail to cite to any part of the record that suggests that the trial justice overlooked or misconceived evidence, or was otherwise clearly wrong, when he found that "[t]here is nothing in the record * * * to suggest that plaintiff could reasonably have discovered the bypass before when it in fact did discover it." *See* Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure.

## VI

### The Trial Justice Did Not Overlook Material Evidence

Finally, defendants argue that the trial justice overlooked evidence by choosing not to believe Mr. Carbone's testimony that the bypass was installed in 1998, rather than in 1986, when the home was built. They contend that he also overlooked a 1997 photograph of the garage showing that the unmetered panel was not yet installed and evidence that plaintiff mistakenly believed that the house had electric heat rather than gas heat.

 "[T]his Court will not disturb determinations of credibility in a non jury trial unless the findings are clearly wrong or the [trial justice] misconceived or overlooked material evidence." *Bogosian v. Bederman*, 823 A.2d 1117, 1120 (R.I.2003)

(quoting *Andreozzi v. Andreozzi,* 813 A.2d 78, 82 (R.I.2003)). Affording the trial justice's findings in the present case the deference they are due, we cannot say that he was clearly wrong in finding that the bypass was installed in 1986 and that defendants' evidence to the contrary was incredible. We agree with the trial justice that "the inventory of usage that existed on the premises up to 1997" makes it "unlikely that the residence did not have an unmetered panel from the time it was built in 1986" and that it was thus "inherently probable that the illegal bypass was installed when the home was constructed."

Furthermore, the photographs that the defendants point to as evidence of the timing of the bypass installation did not have dates on them. The only indication of when the photographs were taken came from the testimony of Mr. Carbone. Accordingly, the trial justice was free to discredit such testimony as lacking in credibility as well, and he did not need to categorically accept or reject each piece of evidence in his decision for this Court to uphold it because implicit in the trial justice's decision are sufficient findings of fact to support his rulings. *See Mattera v. Mattera,* 669 A.2d 538, 541 (R.I.1996). In addition, the trial justice's decision does not appear to be predicated upon any determination of whether the Carbone house had gas or electric heat. We therefore hold that the trial justice did not overlook material evidence.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court, to which court the record in this case shall be remanded.