# ORANGE COUNTY.

## March Term, 1842.

Present, Hon. CHARLES K. WILLIAMS, *Chief Justice.*
    "   STEPHEN ROYCE,   } *Assistant Justices.*
    "   JACOB COLLAMER,  }

---

### Jehiel Smith *v.* Arnold L. Watson.

A physician cannot recover of a brother of an insane person for medical attendance, &c., rendered the latter, at the request of such brother, unless there was an employment under such circumstances as to show an intention on the part of such brother to pay for the services, and so understood by him and the physician.

Where services are performed at the request of two, and the testimony is equally strong to prove a contract against both as against one, both are liable on such contract, and, in an action on book against one of the promissors, the non-joinder of the other may be taken advantage of before the auditor.

The employment of a physician, and a promise to pay him for his services, made on the Sabbath, is not prohibited by statute.

This was an action of book account. Judgment to account having been rendered in the county court, auditors were appointed, who afterwards reported as follows :—

'Your auditors find that the services, charged in the plain-
'tiff's account, were at first entered on small slips of paper
'by the plaintiff for a week or more, and then transferred
'from said slips by the plaintiff to his regular book, which he
'kept ; that said slips were then thrown aside by the plain-

' tiff, and were lost or destroyed.  The defendant objected
' to the plaintiff's book as not containing the original entries,
' but insisted that the first minutes, or original entries should
' be produced.  This objection your auditors overruled, and
' admitted the book.  Your auditors find that the plaintiff is
' a Thompsonian practitioner of medicine at East Randolph,
' and had there an infirmary, where he received and attended
' upon patients ; that the defendant's brother, Charles D.
' Watson, about the 20th of September, 1839, was taken
' suddenly insane, then being at his father's house, in Wil-
' liamstown, where he had resided and made it his home
' most of the time for several years, and that the said Charles
' D. was at that time about the age of twenty-six.  The de-
' fendant, with David Watson, father of the defendant and of
' said Charles D., on the 29th of September, 1839, which
' was Sunday, at said David's instance, went with said
' Charles D. to East Randolph, the said David furnishing
' wagon and horses for the journey, in order to place the
' said Charles D. under the care and medical treatment of
' the plaintiff, at his infirmary ; that they stopped at the tav-
' ern near the plaintiff's establishment, and it was concluded
' between the defendant and the said David that the defend-
' ant should go to the plaintiff and request plaintiff to come
' and see the said Charles D., in order to determine whether
' plaintiff could help the said Charles D.  The defendant
' went and saw the plaintiff and informed him that the said
' Charles D. was sick and crazy.  The said David was previ-
' ously acquainted with plaintiff, but the defendant was not.
' The defendant, and also the said David, appeared very anx-
' ious that the plaintiff should take the said Charles D. under
' his charge, and do his best endeavors to cure him ; that the
' defendant requested the plaintiff to take the said Charles D.
' to his house, which the plaintiff refused to do, but told the
' defendant to take him there, which the defendant did ; and
' after they arrrived there, the defendant, and also the said
' David, renewed their request to the plaintiff that he would
' give his attention to the said Charles D. and exert himself
' to effect a cure of the malady under which the latter was
' laboring ; that no express promise of payment for the plain-
' tiff's services was made to him by any one ; that defendant
' then left the plaintiff's, saying he would call again in a few

' days, and see how the said Charles D. got along; that the
' defendant did call once while the said Charles D. remained
' at the plaintiff's house ; that, at the time the said Charles
' D. was brought to the plaintiff's infirmary, he was wholly
' insane and incapable of taking care of himself; that it took
' two men, frequently three or four, to manage him ; that the
' charges in the plaintiff's account are reasonable for the ser-
' vices rendered ; that after the said Charles D. left plaintiff's
' establishment, the plaintiff sent to Williamstown to inquire,
' and did make inquiry there, if a demand of one or two
' hundred dollars could be secured against the said David or
' the said Charles D.; that the plaintiff made his entries
' originally against the defendant, and him alone, and that
' the services for the care and treatment of the said Charles
' D. while at the plaintiff's, were rendered at the defendant's
' request, but nothing was said expressly between plaintiff
' and defendant about payment ; and therefore your auditors
' find that the plaintiff recover of the defendant the sum of
' two hundred and sixty four dollars and twenty five cents as
' the sum due him from the defendant to balance book ac-
' counts between them, and his costs.'

The plaintiff's account was dated ' 1840,' and the services
rendered were from September 29, 1839, to February 23,
1840.   The county court accepted the report, and rendered
a judgment thereon in favor of the plaintiff for the amount
found due him by the auditors, and the defendant excepted
to the decision.

*L. B. Vilas,* for defendant.

There is no ground to claim a judgment for the plaintiff
except on an original undertaking ; and, in order to come to
that conclusion, it is necessary that the court should be sat-
isfied that it was the intention of both parties, when the ser-
vices were rendered, that the defendant should pay for them ;
or, in other words, that the defendant agreed to pay for the
services, and that the plaintiff rendered them in pursuance of
that agreement.

The defendant was under no legal obligation to assist his
brother.   The father was, by law, bound to support him, if
he had not estate of his own.

All that the defendant did or said was only as a relative

and friend, assisting his father, and not a word was said by the defendant that he would pay, or any intimation given him by the plaintiff that he should look to him, and long afterwards the plaintiff was inquiring whether a demand could be collected of David or Charles D.

The doctrine that a friend cannot speak to an attending physician, expressing a desire or request that his friend shall be taken good care of, without making him liable for all the services rendered afterwards, is not to be endured. *Clark & Meigs v. Waterman*, 7 Vt. R. 76.

If the defendant had been to see the plaintiff alone, the complexion of the case would be different. But the father was there, in whose family Charles D. lived, and who had a duty to perform towards his son, and, from the facts found by the auditors, had as much to say and do about the business as the defendant had, to say the least. Why, then, is not the father liable ? or, why not liable jointly with the defendant, if there is any liability on him ?

The auditors find that whatever was said or done was on Sunday. Now if the defendant was liable on the ground of its being an act of mercy, or necessity, it would seem that he would only bind himself for what was done on the Sabbath.

We believe that judgment should be rendered for the defendant,—

1. Because there never was any original undertaking by the defendant.

2. If the court should think otherwise, then we insist that his undertaking was jointly with David Watson.

3. The agreement, if any was made, is void, being done on Sunday.

*Wm. Hebard*, for plaintiff.

I. It is objected by the defendant that the contract, upon which the plaintiff's right to recover depends, was made on the Sabbath, and therefore void. This is probably all the question in the case that is deserving of *serious* consideration. The case of *Lyon* v. *Strong* is probably the strongest case in support of the objection that will be found ; but that case falls very far short of this, when the reasons for the law, and the circumstances of the two cases are taken into consideration. The contract, in the case of *Lyon* v. *Strong*,

grew out of a chaffering between two *horse jockies,* a trans-
action of that open and public character that it must neces-
sarily tend to a violation and breach of the Sabbath. It was
a transaction of that *class* and *character* that *public policy*
and *public justice* have long since demanded that it should
be put without the pale of the law, even when not done up-
on the Sabbath. It was a transaction originating in the
loosest principles of *immorality.*

What is the *occasion* and *character* of the *contract* in the
case under consideration? Did it have its origin in those
unruly and debasing passions that characterize the other?
We have only to look into the report of the auditors to learn
the fact. So far from it we find it to be one of those
very acts that are sanctioned by *divine revelation* to be done
upon the *Sabbath.* And we have the high and unquestioned
authority of our *blessed Savior* that ' it is lawful to do good
on the Sabbath.'

Thus by going back to the *origin* and *institution* of the
*Sabbath,* we find that one act done on that day is distin-
guished from another by the *necessity* and the *occasion,* and
by the *motive* and *affection* of the heart that dictated it.
Our statute prohibits every person from exercising ' any se-
cular labor, business, or employment,' on the Sabbath, ' ex-
cept such only as are works of necessity and charity.' In
the case of *Lyon* v. *Strong* the court decided the contract
void and illegal, because it was ' a secular labor or employ-
ment' within the meaning of the statute. And the question
now is, does the contract, in the case under consideration,
come within the meaning of that part of the statute? or rath-
er, does it come within that part of the statute, and bear the
designation of ' works of *necessity,* and *charity?'* Of the
latter, we think there can be no doubt. The business and
employment of attending upon the sick and distressed upon
the *Sabbath* has too long been regarded as a *work of neces-
sity* to be now controverted for the first time.

But there is still another view of this question, if possible,
still more decisive of the case. The contract, in the case
under consideration, was an executory contract for the ren-
dering of services for a succession of time, and for an indefi-
nite period. It was not a contract for the rendering of ser-
vices upon the Sabbath. In that respect the case is very

clearly distinguished from the case of *Lyon* v. *Strong*, where the contract was begun and ended upon the Sabbath. And in this case the defendant reaffirmed the contract, by calling upon the plaintiff while he was rendering the services, without giving him notice that he intended to ' repudiate' the contract.

II. The defendant further contends that David Watson, being the father of Charles, was liable to the plaintiff for these services. This objection is also settled by the report, which finds that Charles was of age, and of course his father was no more liable by *law* for his support than the defendant, unless made so by a previous order of court, which it is not pretended was the case ; and that order is made to depend upon the ability of the father. Revised Stat., p. 104, sec. 13, 14, 15.

III. The question whether the claim is reasonable is purely a question of fact, and the finding of the auditors upon that point is not subject to revision by the court.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—In reversing the judgment of the county court, accepting the report of the auditors, we must bear in mind that the auditors were judges of the facts, and with their determination thereon we have nothing to do. But when they state all the facts, as they have done in this case, and it appears they will not warrant the inference which the auditors have made, their decision may be re-examined by the court. In the case of *Clark & Meigs* v. *Waterman*, 7 Vt. R. 76, the facts were reported by the auditor and the court, on those facts, rendered judgment for the plaintiff.

In the case under consideration, it appears that all the services, for which the plaintiff brings this action, were performed for the brother of the defendant, who, though insane, was liable therefor. The present defendant can only be made liable on an original undertaking. The services were not beneficial to him, and he was under no legal obligation to pay for them, unless upon an express undertaking, or unless it may fairly be inferred, from the evidence, that it was the intention of both parties, that the plaintiff should perform the services, and the defendant should pay him therefor.

Further it may be observed that if it appears from the report that the defendant, and any other person with him, are jointly liable on a contract to pay the plaintiff, the defendant may here take advantage of the non-joinder of the other contracting party, and the plaintiff cannot recover against this defendant alone.

An examination of the case convinces us that the facts reported, instead of leading to the conclusion that the defendant was responsible to the plaintiff, negatives such a result altogether. In the first place, it is to be remarked that, in a case like this, we should naturally expect an express promise to pay would have been made, if any liability was intended. No such promise was made. The defendant was under no *legal* obligation to provide for or maintain his brother. His brother was not, and had not been, a member of his family, nor had the defendant been accustomed either to pay any debts for him, or provide for his support. Although the auditors find that the entries were originally made against the defendant, and that the services were performed at his request, yet the slips of paper, on which these entries were made, are thrown by, and the first date to the plaintiff's charges is in 1840, which must have been more than three months after the first services were performed ; and a mere request to the plaintiff to perform the services, or carrying his brother to the house of the plaintiff, would not render the defendant liable, unless it was the intention of both the parties that he should be so liable.

The evidence would as well charge the father of the insane person, either as a joint promissor with the defendant, or as a sole contractor. The young man had been a member of his father's family, had made it his home at his father's house, and the father went with him and the defendant, to the plaintiff's house, and equally with the defendant requested the plaintiff to take care of him. Moreover, the plaintiff sent to inquire whether a demand could be secured against the father or the insane person, being then uncertain to whom he should resort for payment.

All these facts lead irresistibly to the conclusion that the defendant never did agree to pay the plaintiff for those services. Or, if they do in any way tend to prove any such

agreement, it was one made jointly with David Watson, the father, and, in either event, the plaintiff cannot recover.

Compared with the case of *Clark & Meigs* v. *Waterman*, all the strong circumstances are wanting which induced the court to adjudge the defendant in that case liable. There the girl had lived in his family from her childhood until she arrived at the age of eighteen, and he stood *in loco parentis* to her. She also lived with him mostly until her death, which was at the age of twenty-three. He employed the physicians, changed them, and manifested a great concern as to her recovery. The natural conclusion of every one would be that he was taking care of her, as he would of one of his children, and as a member of his family, and, unless he intended to be responsible, he should have so manifested it to the gentlemen whom he employed ; and, furthermore, he called on the plaintiffs, *Clark & Meigs,* for their account, saying he intended to call on the town to see if they would not *assist* him. All these facts indicated strongly an original undertaking to pay the physicians for their attendance, and though not entirely satisfactory to me at the time, they were such as to induce a majority of the court, to hold the defendant liable in that action. In this case there is no proof, whatever, of any of these circumstances, nor any facts sufficient to prove an undertaking of the defendant to pay the plaintiff. We think, the auditors, in this case, were not justified, from the facts reported, in finding the defendant liable to the plaintiff.

If there had been any contract in the case, it could not have been avoided because made on the Sabbath. It was not such a labor as is prohibited by the statute. Healing the sick, or employing a physician so to do, are within the exceptions of the statute, and are such works as necessity and charity require. The decision in the case of *Lyon* v. *Strong*, 6 Vt. R. 214, of the soundness of which I have never had any reason to doubt, and which has lately been recognized by a decision of a judge of the superior court in the city of New York, does not militate with the right of the plaintiff to recover in this case, if his proof had been otherwise sufficient. With respect to the reasonableness or extravagance of the charges of the plaintiff, we cannot inquire, as that subject was for the consideration of the auditors. The judgment of the county court is reversed.