O. FLETCHER BEST *vs.* AMELIA B. MCAUSLAN.

PROVIDENCE—APRIL 19, 1905.

PRESENT: Douglas, C. J., Blodgett and Parkhurst, JJ.

(1) *Parent and Child. Support and Maintenance of Child.*

Plaintiff sued for medical attendance rendered the son of defendant, who was of full age and resided with defendant. It appeared that defendant was

the only person who had anything to do with the employment of plaintiff, the son neither contracting with plaintiff nor promising to pay him; that defendant neither repudiated the liability upon receipt of bill nor at an interview with plaintiff, but, while she did not expressly promise to pay it, gave plaintiff to undersand it would be eventually settled, objecting only to the amount.

It appeared that the property of defendant and her sons, derived from defendant's husband, was undivided, and it was customary to charge up bills paid for the benefit of any of them to their share:—

*Held*, that defendant was liable.

(2)  *Professional Services.  Damages.*

The value of the professional services of a physician in the absence of an express contract is the ordinary and reasonable price for services of a similar nature in the same locality.

ASSUMPSIT.  Heard on petition of defendant for new trial. Judgment reduced.

PARKHURST, J.  The plaintiff, a specialist on the eye, ear, and throat, sues in assumpsit on the common counts for his professional services in performing what is known as the "radical mastoid" operation, and in subsequent attendance upon Albert McAuslan, a son of the defendant, who, at the time of the employment of the plaintiff, in August, 1902, was of full age and residing in the family of the defendant.  The sum charged by the plaintiff for the operation was $500, and for attendance $5 for each visit at the house and $3 for each office visit, amounting to $404; so that the total sum claimed was $904, with interest from December 1, 1903, which amounted to $52.73.  The case was tried before a single justice, jury trial having been waived, and the justice gave decision for the plaintiff for the full amount, $956.73.

The defendant petitions for new trial on two grounds:

1.  That the defendant is not legally responsible for the claim.

2.  That the amount awarded is excessive.

(1)    Upon the question of defendant's liability we are of the opinion that the defendant was legally liable.  At the time of the employment of the plaintiff, the patient, a son of the defendant, although of full age, was living in the defendant's family; the defendant is the only person who appears by the

testimony to have had anything to do with the original employment of the plaintiff; it does not anywhere appear that Albert McAuslan, the patient, had anything to do with such employment other than, being very ill and in great danger, to submit to such surgical operation and subsequent attendance and care as were necessary; nor does it appear that Albert McAuslan at any time made any express contract with the plaintiff or promised to pay him. It further appears that, although the plaintiff subsequently, more than a year after the operation, rendered his bill to the defendant, and that after waiting some time to hear from her he sent her a second bill, and she then wrote him a letter of apology for her seeming neglect, she did not then repudiate the obligation, nor did she repudiate it at a subsequent interview regarding the same; but, on the contrary, that, while she did not then or ever expressly promise to pay the bill, she gave the plaintiff to understand that the bill would be settled as soon as certain money could be collected. The only objection made by the defendant in reference to the settlement of the bill was that her son George thought the bill too large, and thereupon the plaintiff offered to deduct $100. It no where appears that the defendant suggested to the plaintiff that the bill should have been made out against her son Albert, the patient, or that anyone told the plaintiff so, until long after the services were completed, when it appears that another son, George, so stated to the plaintiff. It further appears that the plaintiff made the original charge upon his books to the defendant, and has never made a charge in this matter to anyone else. It further appears that the property of the defendant and her sons, derived from the defendant's deceased husband, the late John McAuslan, had never been divided, and that it was customary in the family to charge up any bills which should be paid for the benefit of either of them to the share of the income belonging to the one for whose account the payment was made; and it was doubtless the intention of the defendant to charge up this claim to the share of Albert McAuslan when the amount of the same should have been agreed upon. The only real dispute, so far as this plaintiff was informed, until long after he had completed his services and rendered his bill, was as to

the amount due.   In view of all these facts we are of the opinion that the defendant had made herself liable for the payment of a proper and just bill for the services of the plaintiff.

Certain cases cited by the defendant to support her contention do not seem to us to do so.

In *Edelman* v. *McDonell*, 126 Cal. 210, where it is held that a father's oral promise to pay for services rendered his son, who is not a minor, will not bind him (the father), it appears that the son (patient) made the original contract of employment and was of full age and not living with the father.   On p. 212, the court says:   "It does not appear that W. F. McDonell was living with his father, or was being supported by him.   For aught that appears they may have been living apart for years, and the son may have his own family and business.   Had the father been taking care of him and actually supporting him as though he were still a member of his family, as minor children generally are of their parents' family, the presumptions might be very different."

In *Smith* v. *Watson*, 14 Vt. 332, there was no evidence of a promise to pay on the part of the defendant, nor of any intention on the part of both parties that the defendant should pay. All the circumstances were so different from those in this case that we can not regard the case as of any value as an authority for the defendant's contention here.

In *Crane* v. *Baudouine*, 55 N. Y. 256, it appears that the original employment of the plaintiff as a physician for the patient, who was a married woman, was by the husband of the patient, and although the patient was then at her father's house, having been brought there by her mother to be taken care of, there was no evidence that the patient's father had ever employed the physician or promised to pay him; on the contrary, the father made an express denial that he called the plaintiff or made any contract with him.

In *Boyd* v. *Sappington*, 4 Watts (Pa.), 247, where it is stated in the head-note, that "a request by a father to a physician to attend his son, then of full age, and sick at the father's house, raises no implied promise on the part of the father to pay for the services rendered," it appears in the opinion, on page 248,

that "the defendant" (the father) "said it was the wish of his son that he should come." Again, "It was within the knowledge of the plaintiff that the services were rendered to the son, who, although a single man, and residing with his father, was above the age of twenty-one years, was engaged in business for himself, and had property to answer this demand."

It does not appear in this case that Albert McAuslan had anything to do with the employment of the plaintiff, that he expressed any wish to have him come, or that the plaintiff had any knowledge that the son had sent for him or wished him to come, or that he had any property; and it is quite significant that Albert McAuslan was not called as a witness.

(2)     When we come to the question of the proper amount to be allowed to the plaintiff, under the common counts, and in the absence of any special contract as to the amount, we find that while the plaintiff and his two expert witnesses declare that an operation of the character of the "radical mastoid" is a dangerous operation requiring great skill and ability, and that under the circumstances of this case the sum of $500 charged was not excessive, yet we are met by testimony produced by defendant, which is uncontradicted, from Dr. Sprague, a specialist in the same line, who has had a large experience with this class of operations, who testifies that the price for this operation in Providence would range from $200 to $300, although higher in other and larger cities.

The rule has been laid down, in several cases cited by defendant, that "the value to be proved is the *ordinary* and reasonable price for services of that nature" (*Styles* v. *Tyler*, 64 Conn. 432, 463; *Ladd* v. *Witte*, 92 N. W. Rep. (Wis.) 365, 367), and that to prove the real value of services in question, *customary* charges of physicians for like services in the same locality may be shown (*Jonas* v. *King*, 81 Ala. 285; see also, *Pfeil* v. *Kemper*, 3 Wis. 284) when the same rule is applied as to services not medical.

In our opinion this is the true rule to be applied in this case, and it follows that, as a sum of not to exceed $300 appears to be the customary charge for this operation in this locality, that sum is all that the plaintiff should be entitled to recover for

the operation alone, in the absence of an express contract for a larger sum.

As to the charges of $5 per visit at the house and $3 per visit at the office, all the medical witnesses on both sides testify that those are the ordinary and customary charges for a specialist in this locality and that the services of the specialist in this case were necessary and proper.

Upon the whole case we are of the opinion, therefore, that the defendant is liable to the plaintiff for the sum of $300 for the operation; for the sum of $404 for visits, with interest thereon from the first day of December, 1903.

Judgment for the plaintiff will be entered in accordance herewith.

*George H. Huddy, Jr.*, for plaintiff.
*Edward D. Bassett and George H. Raymond*, for defendant.