DECISION
William J. Medeiros ("Medeiros") and Margaret E. Cambra ("Cambra") (collectively the "Plaintiffs") filed a verified complaint for declaratory judgment against Bankers Trust Company ("Bankers Trust"), Select Portfolio Servicing, Inc. ("Select Portfolio"), Brownell Realty, Inc. ("Brownell Realty"), the Town of North Kingstown (the "Town"), and Fiduciary Trust Services ("Fiduciary Trust") pursuant to G.L. 1956 § 9-30-1 et seq., requesting that this Court declare Cambra the fee simple owner of real property by virtue of a warranty deed from Medeiros. Daniel Konuch ("Konuch") intervened in the case by claiming an interest in the property after entering into a purchase and sales agreement with Brownell Realty for the subject parcel. In addition to the claim for declaratory judgment, the verified complaint also seeks compensation for unjust enrichment against Fiduciary Trust and Brownell Realty. The verified complaint also asserts claims for mistake, fraud and negligent misrepresentation against Select Portfolio and Bankers Trust. Additionally, the complaint contains a claim for mistake against the *Page 2 
Town. Since the filing of the verified complaint, Select Portfolio, Bankers Trust, and the Town have been dismissed from the case. At this point, only the declaratory judgment and unjust enrichment claims are still before this Court for decision.
 I Facts and Travel
On May 17, 1996, Will-Jay, Inc. conveyed property located at 360-362 Devil's Foot Road, North Kingstown, Rhode Island (the "property") to Medeiros. According to the terms of the conveyance Medeiros became the fee simple owner of the property. In order to purchase the property Medeiros executed a note to Quality Mortgage USA, Inc. ("Quality Mortgage") in the amount of $68,750 secured by a mortgage on the property. At the same time, Quality Mortgage assigned its interest in the note and mortgage to Bankers Trust, as Trustee. Medeiros duly recorded the conveyance, the note and the mortgage on May 20, 1996, in the Land Evidence Records of the Town of North Kingstown. Medeiros received notice his monthly mortgage payments were due from Select Portfolio.
Subsequently, Medeiros became unable to meet his tax obligations on the property. On June 16, 1999, the Town conducted a tax sale of the property. At the tax sale, the Town sold the property to Fiduciary Trust. The tax deed indicates the Town sent notice of the sale to Medeiros at 23 Rosebank Avenue, Providence, Rhode Island and Fleet Bank located at 111 Westminster Street, Providence, Rhode Island. However, the Town failed to send notice of the tax sale to Bankers Trust, as Trustee, even though Bankers Trust was the record holder of the first mortgage on the property.
On June 26, 2000, one year and ten days after the tax sale, Fiduciary Trust filed a Petition to Foreclose Tax Lien with the Washington County Superior Court, in C.A. No. WM 2000-0297 (the "Tax Lien case"). A Final Decree in the Tax Lien case entered on July 28, 2000. However, *Page 3 
on October 10, 2000, Bankers Trust filed a complaint against Medeiros, Stephen Goldman, and Fiduciary Trust, and the Town in C.A. No. WM 2000-0499 (the "Notice case"), to invalidate the tax sale finalized in the Tax Lien case. Bankers Trust sought to invalidate the tax sale because, as Trustee, it was entitled to notice of the pending tax sale as the record mortgage holder. On December 17, 2001, the Court granted summary judgment for Bankers Trust, and default judgments against Medeiros, Stephen Goldman and Fiduciary Trust entered. Medeiros defaulted because he did not respond, or enter any appearance whatsoever, in the Notice case. According to his filings, Medeiros did not respond, or enter an appearance, because he believed his rights were adequately protected by the mortgagee, Bankers Trust, even though the two parties were on opposite sides of the suit.[1]
The Court's grant of summary judgment voided the tax sale held by the Town, and vacated the final decree entered in the Tax Lien case. According to the judgment in the Notice case, title in the property vested back with Medeiros, subject to the mortgage held by Bankers Trust, as Trustee. Specifically, the judgment in the Notice case provides in pertinent part, "[t]itle to the property located at 360-362 Devil's Foot Road, North Kingstown vests back into William Medeiros subject to the mortgage to Bankers Trust Company, as Trustee recorded with the *Page 4 
Records of Land Evidence for the Town of North Kingstown." Medeiros received a copy of the default judgment from the Notice case on December 24, 2001. Additionally, a copy of the judgment was recorded in the Land Evidence Records of the Town of North Kingstown on March 14, 2002.
On June 21, 2002, Fiduciary Trust filed a Motion to Vacate Default Judgment and Summary Judgment in the Notice case. Thereafter, on September 6, 2002, the Court entered an Order vacating the default judgment and summary judgment against Fiduciary Trust only. This Court vacated the default judgment because Fiduciary Trust was not properly served, and did not receive notice of the action pending against it in the Notice case. However, a copy of the order vacating the default judgment and summary judgment against Fiduciary Trust was never sent to Medeiros, or recorded in the Land Evidence Records of the Town of North Kingstown.
During this time, in the middle of 2004, Medeiros entered into negotiations with Select Portfolio regarding a "short-sale"[2] of the property. On April 29, 2005, Medeiros and Select Portfolio reached an agreement to discharge the mortgage on the property for $69,893.53. According to the agreement between the parties, Medeiros intended to transfer the property to his sister, Cambra, who would provide the $69,893.53 to discharge the outstanding mortgage. Select Portfolio and its agents represented to Medeiros that after payment, Bankers Trust would discharge the mortgage so the property could be conveyed to Cambra.
In compliance with the agreement reached between the parties, on May 2, 2005, Cambra wired $69,893.53 to Select Portfolio to discharge the mortgage. In addition, Cambra also paid $5,106.47 to the Tax Collector for the Town of North Kingstown to cover the outstanding taxes *Page 5 
for 2003 and 2004. As a result, Medeiros, without knowledge of the Order vacating the default judgment and summary judgment against Fiduciary Trust in the Notice case, executed a warranty deed for the property to Cambra on May 31, 2005.
Concurrently, on May 31, 2005, Bankers Trust, Fiduciary Trust, and the Town entered a Stipulated Judgment in the Notice case. The Stipulated Judgment vacates the judgment granted in the Notice case and renders the judgment filed in the Land Evidence Records of the Town of North Kingstown void. As part of the Stipulated Judgment, title to the property vested in Fiduciary Trust dating back to December 17, 2001, and discharged the mortgage held by Bankers Trust. Additionally, the Stipulated Judgment in the Notice case was recorded in the Land Evidence Records of the Town of North Kingstown on the same day, May 31, 2005. After recording the Stipulated Judgment, Fiduciary Trust executed a quit-claim deed for the property to Brownell Realty, which was recorded in the Land Evidence Records of the Town of North Kingstown on May 31, 2005, as well. Subsequently, Konuch entered into a purchase and sales agreement with Brownell Realty for the property.
On June 3, 2005, a final title search was performed to complete the recording of the deed from Medeiros to Cambra. It was during the final title search Medeiros and Cambra learned of the existence of the Stipulated Judgment in the Notice case. The discovery of the Stipulated Judgment was the first notice Medeiros and Cambra had of any potential cloud on the title of the property. Despite the existence of the Stipulated Judgment, the Plaintiffs recorded the warranty deed transferring the property from Medeiros to Cambra on June 9, 2005.
In an attempt to clear title to the property, the Plaintiffs filed this lawsuit on June 17, 2005. On October 14, 2008, and November 18, 2008, this matter was tried before the Court sitting without a jury. In their verified complaint, the Plaintiffs have sought a declaratory *Page 6 
judgment invalidating both the Stipulated Judgment in the Notice case, which vested title in the property to Fiduciary Trust, and the deed conveying the property from Fiduciary Trust to Brownell Realty. As part of the judgment, the Plaintiffs request this Court declare any clouds upon the title to the property removed, and adjudge Cambra the fee simple owner of the property by virtue of the warranty deed from Medeiros. In the alternative, Plaintiffs request a judgment against Fiduciary Trust, Brownell Realty, and/or Daniel Konuch, for unjust enrichment stemming from Cambra's payment of $5,106.47 in taxes on the property to the Town.
 II Analysis A Claim Preclusion
As a preliminary matter, this Court must determine whether any part of this action is barred by the doctrine of collateral estoppel or res judicata. In their post trial memorandum, Defendants contend some of Plaintiffs' claims are barred by the doctrines of collateral estoppel and res judicata. Defendants assert the Plaintiffs should have challenged any potential deficiencies in notice to Bankers Trust during the Tax Lien and Notice cases, rather than through a collateral attack in the case at bar. Specifically, the Plaintiffs claim an appropriate challenge to the Stipulated Judgment in the Notice case was through an appeal to the Rhode Island Supreme Court. This Court agrees.
"The doctrine of res judicata involves both the concepts of issue preclusion and claim preclusion." Foster-Glocester Reg'lSch. Comm. v. Bd. of Review, 854 A.2d 1008, 1014 (R.I. 2004). Claim preclusion operates to bar "the relitigation of any issue that could have been litigated in a prior proceeding, including a direct appeal, that resulted in a final judgment between the same parties, or those in privity with them." Taylor v. Wall,821 A.2d 685, 688 (R.I. 2003). *Page 7 
For res judicata to apply, a party must show "identity of parties, identity of issues, and finality of judgment in an earlier action."Beirne v. Barone, 529 A.2d 154, 157 (R.I. 1987) (citingHebert v. Ventetuolo, 480 A.2d 403, 405 (R.I. 1984)). The Rhode Island Supreme Court has adopted the broad "transactional" rule that precludes the re-litigation of "all or any part of the transaction, or series of connected transactions, out of which the [first] issue arose." ElGabri v. Lekas,681 A.2d 271, 276 (R.I. 1996) (quoting Manego v. Orleans Bd. ofTrade, 773 F .2d 1, 5 (1st Cir. 1985)). "What factual grouping constitutes a `transaction,' and what groupings constitute a `series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations. . . ." Ritter v. Mantissa Inv. Corp.,864 A.2d 601, 605 (R.I. 2005) (citation omitted).
"Parties are in privity when `there is a commonality of interest between the two entities' and when they `sufficiently represent' each other's interests." Duffy v. Milder,896 A.2d 27, 36 (R.I. 2006) (quoting Commercial Union Ins. Co. v.Pelchat, 727 A.2d 676, 680 (R.I. 1999)). Both Medeiros and Fiduciary Trust were parties to the Tax Lien and Notice suits, thus satisfying the first prong of res judicata, as to them. In addition, because Fiduciary Trust has transferred the property to Brownell Realty, who entered into a sales agreement with Konuch, privity exists between Fiduciary Trust, Brownell Realty, and Konuch. Further, because Medeiros has conveyed the property to Cambra, Cambra stands in privity with Medeiros. As a result, the parties to the case at bar and the Tax Lien and Notice cases are either the same, or in privity with each other.
Additionally, both the Tax Lien and Notice cases ended in valid final judgments. After being served with the complaint in the Tax Lien case, Medeiros failed to answer or file an *Page 8 
appearance as required by Rule 12(1)(A) of the Rhode Island Superior Court Rules of Civil Procedure.[3] As a result, default judgment entered against Medeiros and title vested in Fiduciary Trust. Further, in the Notice case, Bankers Trust, Fiduciary Trust, and the Town, the only parties not in default, entered the Stipulated Judgment dismissing all claims in the case "with prejudice." Under Rhode Island law, a "[d]ismissal with prejudice . . . constitutes a full adjudication of the merits as if the order had been entered subsequent to trial." School Comm.of North Providence v. North Providence Fed'n of Teachers,Local 920, Am. Fed'n of Teachers (AFL-CIO),122 R.I. 105, 109, 404 A.2d 493, 495 (1979); seealso Lennon v. Dacomed Corp.,901 A.2d 582, 591 (R.I. 2006) (noting "if a dismissal is designated `with prejudice' it will be accorded preclusive effect in a subsequent proceeding if" the res judicata elements are met). Moreover, the fact the stipulated judgment entered against Medeiros in the form of a default judgment does not matter. SeeZalobowski v. New England Teamsters and Trucking Indus. PensionFund, 122 R.I. 609, 612, 410 A.2d 436, 437 (1980); seealso Rhode Island Hosp. Trust Nat. Bank v. OhioCas. Ins. Co., 789 F.2d 74, 81 n. 10 (1st Cir. 1986) (quotingMorris v. Jones, 329 U.S. 545, 550-51 (1947) ("`A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default'").
Further, this Court is also satisfied an identity of issues in the case at bar and the Tax Lien and Notice cases also exists. In both previous cases, the ultimate issue for this Court to decide was title to the property. In the Tax Lien case Medeiros had original title in the property, subject to a mortgage held by Bankers Trust, and Fiduciary Trust claimed title by way of a tax *Page 9 
sale. Medeiros was served with the complaint in the Tax Lien case and failed to file an answer or make an appearance. As a result, default judgment entered against him and the Court vested title in Fiduciary Trust. Again, in the Notice case, Bankers Trust once again raised the issue of title to the property through a collateral attack on the title. In its complaint Bankers Trust alleged the tax sale to Fiduciary Trust was void because the Town failed to provide notice to Bankers Trust, a record mortgage holder. Bankers Trust attempted to send proper notice to Fiduciary Trust, but mistakenly served the wrong individual. Thus, default judgment entered against Fiduciary Trust finding no notice of the tax sale, but this order was vacated when the improper service was discerned. After vacating the default judgment, the parties determined Bankers Trust did have notice of the tax sale and an opportunity to redeem the property. As a result, the parties entered the Stipulated Judgment, which dismissed all of Bankers Trust's claims, including its lack of notice, "with prejudice." Despite this, in their post trial memorandum Plaintiffs once again argue, "The Tax Sale Was Invalid Due to Improper Notice to the First Mortgagee so that the Order Vacating the Tax Sale and Vesting Title Back to Mr. Medeiros Was Proper."
Therefore, this Court finds that any claims regarding Bankers Trust's lack of notice precluded by the doctrine of res judicata. Simply because Medeiros erroneously believed his rights were adequately protected by Bankers Trust does not excuse his failure to answer or appear in either case to protect his own interest. The appropriate avenues for Medeiros to pursue were to file an answer or appear in either the Tax Lien or Notice cases, and potentially file an appeal with the Supreme Court if aggrieved by the decision in either. *Page 10 
 B Notice 1. Rule 5(a)
The parties also disagree over the notice, if any, Medeiros was entitled to of the entry of the Stipulated Judgment in the Notice case. Principally, the parties disagree over the effect Medeiros' default had on his entitlement to notice. Rule 55 of the Superior Court Rules of Civil Procedure provides:
 (a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
 (b) Judgment. Judgment by default may be entered as follows: . . .
 (2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; . . . If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 10 days prior to the hearing on such application.
Additionally, Rule 5(a) of the Superior Court Rules of Civil Procedure provides:
 No service need be made on parties in default for failure to appear except that motions for assessment of damages and pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.
Plaintiffs argue the exception to Rule 5(a) for "motions for assessment of damages and pleadings asserting new or additional claims for relief" applies to the case at bar. In essence, Plaintiffs contend the Stipulated Judgment sought additional relief, which required notice be sent to Medeiros. According to Plaintiffs, the original claim filed by Bankers Trust merely sought invalidation of the tax sale, "not the rights of the purchaser in the tax sale." As a result, once *Page 11 
title vested back to Medeiros any further action affecting his interest in the property constituted a new claim. Conversely, the Defendants allege the exception for "motions for assessment of damages and pleadings asserting new or additional claims for relief" does not apply. Defendants assert the entry of default against Medeiros settled whether he had any claim to the property. According to the Defendants, the motions and stipulations which entered after Medeiros defaulted only sought to clarify the status of the property between Bankers Trust and Fiduciary Trust. Thus, after the entry of default against Medeiros, Defendants assert no new damages were made and no new claims were brought against Medeiros.
In the Tax Lien case Medeiros failed to answer or appear to assert any claim to an interest in the property. The default judgment entered against Medeiros in the Tax Lien case terminated any interest he might have in the property. Similarly, in the Notice case, Bankers Trust filed a complaint against Medeiros, Fiduciary Trust, and Stephen Goldman.[4] The complaint in the Notice case sought to contest Fiduciary Trust's title to the property by invalidating the tax sale in the Tax Lien case. Once again, Medeiros failed to answer or even file an appearance in the Notice case alleging he had an interest in title to the property. By allowing himself to be defaulted a second time, Medeiros failed to adequately protect or preserve any interest in the property. Simply because the initial default judgment was sent to Medeiros as a courtesy and fortuitously re-vested title in Medeiros does not change his status as party in default. Further, the default against Medeiros was never lifted or set aside in the Notice case. As a result, the motions and stipulations which entered after Medeiros defaulted only sought to clarify the status of the property between Bankers Trust and Fiduciary Trust. Thus, after the entry of default against *Page 12 
Medeiros, the Defendants made no attempt to assess damages or make any new claim against Medeiros.
 2. Due Process
Plaintiffs next assert that the Defendants failure to provide notice of the Stipulated Judgment in the Notice case violated Medeiros' right to due process. Specifically, Plaintiffs argue Medeiros' due process rights attached after he received notice title re-vested in him as part of the default judgment initially entered against Fiduciary Trust. According to the Plaintiffs, because the Defendants did not provide Medeiros with notice of the Stipulated Judgment, Medeiros' due process rights under the Rhode Island and United States Constitutions were violated. Conversely, Defendants contend Medeiros' due process rights were not violated because Medeiros was in default for the duration of the Notice case. Defendants contend Medeiros' due process rights were satisfied when he received a copy of the summons and complaint and allowed himself to be defaulted.
The fundamental principle of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner. Goldberg v. Kelly,397 U.S. 254, 267 (1970); Bourque v. Dettore,598 A.2d 815, 824 (R.I. 1991). "Essential to the due process right to be heard is adequate notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Peter G.,577 A.2d 996, 998 (R.I. 1990). Although procedural due process requires a hearing before there is a permanent deprivation of property, an unresponsive defendant may forfeit this constitutional right. See Cent. Operating Co. v. Util. Workers ofAm., 491 F.2d 245, 251-52 (4th Cir. 1974). "Default judgments entered for failure to answer within the time allowed, after proper service, do not violate due process." Id.; seealso Bazine State Bank v. Pawnee Prod. *Page 13 Serv., Inc., 781 P.2d 1077, 1081 (Kan. 1989); Weigner v.City of New York, 852 F.2d 646, 652 (N.Y. 1988) (noting "due process only requires notice of `the pendency of the action' and an opportunity to respond") (citation omitted).
In both the Tax Lien and Notice cases, Medeiros defaulted for failing to answer, or appear, within the allowed period. As a result, default judgment entered against Medeiros in both the Tax Lien and Notice cases. Additionally, Medeiros does not allege the default judgments against him were improper, or claim the default judgments should be set aside for any of the "excusable" reasons provided under Rule 55(c) of the Superior Court Rules of Civil Procedure. At no point during the trial did Medeiros disclose any reason for him to believe the time to answer was enlarged, or that he even attempted to answer. Indeed, in his post-trial memorandum Medeiros contends he had no intention of answering or appearing because he believed, "his rights were protected by the mortgagee, Bankers Trust." Medeiros, by his failure to answer, never disputed or contended he had a valid and enforceable interest in the property. By assuming Bankers Trust adequately represented his rights, Medeiros willfully and knowingly undertook the risk of an adverse judgment. This Court is satisfied Medeiros' rights to due process were satisfied — in both the Tax Lien case and the Notice case — when he was served with a copy of the summons and the complaint, and elected not to protect any interest he might have in the property. "The purpose of the default procedures is to protect diligent parties from delay and uncertainty caused by unresponsive parties." West Coast Distrib., Inc. v. Am. Transp., Inc., (citing Swaim v. Moltan Co., 73 F.3d 711 (7th Cir. 1996)). Under these circumstances, and based on Medeiros' willful failure to answer, or appear, in two separate proceedings, this Court holds Medeiros' rights to due process were not violated. *Page 14 
 C Unjust Enrichment
"Recovery for unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them." Narragansett Elec. Co. v. Carbone,898 A.2d 87, 99 (R.I. 2006) To recover for unjust enrichment,
 "a plaintiff is required to prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof." Bouchard v. Price, 694 A.2d 670, 673 (R.I. 1997) (quoting Anthony Corrado, Inc. v. Menard Co. Building Contractors, 589 A.2d 1201, 1201-02 (R.I. 1991)).
The Plaintiffs have also asserted a claim for unjust enrichment against the Defendants stemming from Cambra's payment of taxes due on the property for the years 2003 and 2004. Plaintiffs argue Cambra paid the outstanding taxes for 2003 and 2004 under the mistaken belief Medeiros held good title to the property. Plaintiffs allege that by making these payments Cambra conferred a benefit on the property. Accordingly, Plaintiffs argue that if title remains with the Defendants, a benefit was conferred on the Defendants because they will realize the benefit of her tax payments. Conversely, Defendants argue any award for unjust enrichment is inappropriate because such a finding necessarily indicates Plaintiffs were the owners of the property. Defendants argue that if the Plaintiffs were the owners of the property they were required to pay any taxes due on the property. However, in the final line of their post trial memorandum the Defendants acknowledge, "[t]he issue of awarding Plaintiff the repayment of $5,106.47 is in the sound discretion[sic] of this Court."
Defendant misapplies the principles of unjust enrichment when it argues that a party must *Page 15 
be an owner of property in order to succeed with such a claim. The Rhode Island Supreme Court has held a party does not need to own a piece of property in order to recover under a theory of unjust enrichment. See Dellagrotta v. Dellagrotta,873 A.2d 101, 113-15 (R.I. 2005) (allowing recovery for the appreciation in value attributable to a party's improvements to a house, and the cost of those improvements, even though the party did not own the residence). The Rhode Island Supreme Court has determined a benefit "is conferred when improvements are made to property, materials are furnished, or services are rendered without payment." Carbone, 898 A.2d at 99 (stolen utilities);see also, Dellagrotta, 873 A.2d at 113-14;Landmark Med. Ctr. v. Gauthier,635 A.2d 1145, 1148-49 (R.I. 1994) (medical services); NewportOil Corp. v. Viti Bros., Inc., 454 A.2d 706, 706-08 (R.I. 1983) (gasoline deliveries made to the defendant service station for resale); Providence Steel Iron Co. v. Flammand,413 A.2d 487, 487-88 (R.I. 1980) (steel building components);Best v. McAuslan,27 R.I. 107, 108-10, 60 A. 774, 774-75 (1905) (medical services).
In this case, the Court is satisfied a benefit was conferred on the Defendants when Cambra paid the taxes on the property for 2003 and 2004. Numerous authorities have found the mistaken payment of taxes on a property constitutes a benefit. See,e.g., Bennerson v. Small,842 F.2d 710, 716-17 (3rd Cir. 1988) (denying title to the property, but allowing recovery for improvements and taxes paid on the property); Buckett v. Jante,767 N.W.2d 376, 383 (Wis. App. 2009) ("[plaintiff's] claim that his inadvertent tax payments unjustly enriched [the defendants] is therefore viable"); Restatement (Third) of Restitution Unjust Enrichment § 8(1) (Tentative Draft No. 1, 2001) ("A person whose payment in discharge of a lien confers an unintended benefit on another, as a result of the payor's mistake about the ownership of the encumbered property, . . ., may be subrogated to the discharged lien as necessary to prevent the *Page 16 
unjust enrichment of the other."). By paying the back taxes on the property for the 2003 and 2004 years, Cambra released a burden placed on the property by the Town. Prior to alienating their interest in the property to Brownell Realty, Fiduciary Trust would have had to pay this debt obligation if Cambra had not. Thus, this Court is satisfied Cambra's tax payments for the 2003 and 2004 tax years conferred a benefit on the Defendants.
Additionally, this Court is also satisfied the Defendants appreciated the benefit conferred on the property by Cambra. According to the Restatement, "[r]estitution for the mistaken performance of another's obligation is readily available where the performance consists of payment of a money debt. If liability in restitution merely substitutes one creditor for another, the restitution defendant is not substantially prejudiced by the claimant's mistaken intervention. . . ." Restatement (Third) of Restitution Unjust Enrichment § 7(1). The Restatement further provides "[m]istaken payment of another's debt may have the effect of discharging a lien on the other's property, in which case the payor may seek to be subrogated to the discharged lien. The standard example involves mistaken payment of taxes on another's property."Id., § 7(1) cmt. a. In this case, the readily commutable nature of the tax payments made by Cambra could be easily returned by the Defendants at any time. Upon learning of the erroneously paid tax payments, the Defendants could have readily returned the $5,106.47 to Cambra. Thus, this Court finds the Defendants appreciated the benefit conferred on the property because they have refused to refund the erroneous tax payments to Cambra.
Finally, this Court also concludes it would be inherently unjust to allow Defendants to freely alienate the property without paying the property taxes due as the record owners. Here, Cambra paid a total of $5,106.47 to the Tax Collector for the Town of North Kingstown to cover *Page 17 
the outstanding taxes due on the property on May 4, 2005.[5]
Cambra made these payments under the mistaken impression Medeiros was the record title holder of the property. However, the Stipulated Judgment entered into by Fiduciary Trust and Bankers Trust vests title in the property to Fiduciary Trust as of December 17, 2001. As the record title holders of the property from December 17, 2001, Fiduciary Trust, or its privies, were responsible to pay the property taxes assessed on the property by the Town. Therefore, this Court finds it would be inequitable if the Defendants did not reimburse Cambra for the tax payments made on the property for 2003 and 2004. As a result, this Court holds the Plaintiffs have satisfied all of the elements of unjust enrichment, and awards Cambra $5,106.47 representing the property taxes paid for 2003 and 2004.
 III Conclusion
Based on the foregoing, the Court finds the Defendant Fiduciary Trust, and its assigns, are the record title holders of the property as a result of the Stipulated Judgment. Additionally, the Court holds any claims by the Plaintiffs regarding the proper notice to Bankers Trust of the tax sale precluded by the doctrine of the res judicata. Further, the Court finds that — because of his default status — Medeiros was not entitled to notice of the Stipulated Judgment, and that failure to provide such notice did not violate his rights to due process. Finally, after a review of the evidence, the Court awards Plaintiff, Cambra, $5,106.47 in unjust enrichment for the property taxes she paid on the property for 2003 and 2004 tax years.
Counsel for Defendants shall submit an appropriate order for entry in accordance with this Decision within ten (10) days.
[1] It is important to note Medeiros does not claim he defaulted for any of the excusable reasons provided in Rule 55(c). Rule 55(c) allows for the setting aside of a default "in accordance with Rule 60(b)." Rule 60(b) provides in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
[2] A short sale of real estate occurs when the sale proceeds of the subject property are less than the balance owed on the mortgage. Typically, short sales occur when a borrower is unable to pay the mortgage on their property, but the lender concludes a small loss is preferable to attempting to obtain the balance of the loan from the debtor. Short sales are amendable to debtors and creditors because it allows them to avoid the foreclosure process, which can involve large transaction fees for a lender and decreased credit scores for borrowers.
[3] Rule 12(1)(A) provides in pertinent part:
 (1) A defendant shall serve an answer
 (A) Within 20 days after the service of the summons and complaint upon the defendant, unless the court directs otherwise when service of process is made pursuant to an order of court. Where service upon a defendant is made by publication of an order of notice, a defendant shall serve an answer within 20 days after the last publication of said order of notice.
[4] In the Notice case, Bankers Trust's complaint describes Stephen Goldman as "an individual with a last known address of 1009 Post Road, Warwick, Rhode Island 02888." Stephen Goldman never answered or appeared and was defaulted. After reviewing the file the Court is uncertain about the interest, if any, Stephen Goldman had in the property. However, at this point in the proceedings, it is clear Stephen Goldman does not assert any interest in the property.
[5] The Court once again notes the Stipulated Judgment entered in the Notice Case, WM 2000-0499, was not recorded in the land evidence records until May 31, 2005.